Harold A. BRADFORD, Plaintiff,

v.

SCHOOL DISTRICT NO. 20, CHARLESTON, SOUTH CAROLINA, a body corporate, and Lawrence O'Hear Stoney, Chairman of School District No. 20, Charleston, South Carolina, and Thomas A. Carrere, Superintendent, O. Johnson Smalls, Dr. John C. Hawk, A. Leonard Mackey, Herbert A. Stender, Jr., and Mrs. John Bettis, Members, Board of Trustees of School District No. 20, Charleston, South Carolina, Defendants.

Civ. A. No. 8564.

United States District Court
E. D. South Carolina,
Charleston Division.

Aug. 19, 1965.

Russell Brown, Benjamin L. Cook, Jr., Charleston, S. C., Matthew J. Perry, Lincoln C. Jenkins, Jr., Columbia, S. C., for plaintiff.

Charles H. Gibbs, Sinkler, Gibbs & Simons, Charleston, S. C., for defendants.

SIMONS, District Judge.

This matter is before the court upon defendants' motion to dismiss the complaint herein pursuant to Rule 12 [b] [6] of the Federal Rules of Civil Procedure on grounds that plaintiff has failed to state a claim upon which relief can be granted in that: [a] it appears on the face of the complaint that the plaintiff was suspended or dismissed from his teaching position by reason of misconducts on December 24, 1964, under statutory authority of the School District Trustees, and [b] it does not appear on the face of the complaint that the plain-

tiff has followed the administrative procedure required of him by the statute law of this State. Alternatively the defendants' move for dismissal on lack of jurisdiction over the subject matter because there is no diversity of citizenship between the parties and because the amount actually in controversy is less than Ten Thousand Dollars [$10,000.00]. This matter has been before me previously on plaintiff's motion for an ex parte injunction, resulting in order dated January 19, 1965.

Plaintiff seeks to invoke the jurisdiction of the court under the Fourteenth Amendment to the Constitution and Title 28 U.S.C. § 1331 and § 1343, and Title 42 U.S.C. § 1981 and § 1983.

The complaint alleges that on December 24, 1964, plaintiff, a Negro, entered the R. A. Shuler Barber Shop in Charleston, S. C., and sought to have his hair cut; the manager of the barber shop refused to serve him and requested that a city policeman remove him from the premises; plaintiff was thereafter arrested by the police and charged with being drunk, disorderly and assaulting a policeman. The complaint further states that on December 30, 1964, plaintiff was tried and convicted of the above charges in the Municipal Court of the City of Charleston, and the convictions were promptly appealed to the Court of General Sessions for Charleston County; that on December 31, 1964, he was notified by letter that effective that date he was suspended from his position as a school teacher at Burke High School in School District No. 20 without pay until further notice.[1]

Plaintiff further alleges in his complaint that he believes his suspension was a result of his alleged unlawful conduct on December 24, 1964; that his dismissal from his teaching position was merely retaliatory action by defendants against plaintiff for his lawful protest against the owners and employees of the Shuler barber shop and the governmental authorities of the City of Charleston; that such dismissal was not authorized by any valid rule or regulation concerning his conduct, and came without warning, notice, or opportunity for plaintiff to be heard, and did therefore deprive plaintiff of his constitutional rights of due process, guaranteed by the Fourteenth Amendment to the United States Constitution.

The prayer of the complaint asks the court to issue [1] a temporary restraining order; or [2] in the alternative an order to show cause and to advance the cause on the docket and order a speedy hearing; and [3] "upon such hearing to issue preliminary and permanent injunctions forever restraining defendants from interfering with plaintiff's rights to remain in his employment as * * teacher * * * during the school year of 1964–1965 under the rules and regulations no different from those applied to other teachers similarly situated"; and [4] such other additional relief as may appear to the court to be equitable and fair.[2]

Plaintiff does not allege in his complaint that defendants, or any one of them, engaged in any kind of conspiracy with the owners or employees of the Shuler Barber Shop, or with any city officials or law enforcement officers, or with any other person, to deprive plaintiff of his constitutional rights. During the hearing on defendants' motion to dismiss, plaintiff admitted that defendants were in fact never so engaged in any conspiracy to deprive him of his rights. Indeed, he asserts in his complaint that it is his belief "that the action of the defendants in dismissing him from his

1. Letter from School District #20, Charleston County, S. C., addressed to plaintiff dated December 31, 1964, contained the following: "This is to advise you that, effective immediately, you are suspended from your position as a teacher of this school district until further notice. Your period of suspension will be without pay."

2. By Order of this court dated January 19, 1965, plaintiff's requests for ex parte injunction, rule to show cause, and advancement on docket were denied.

position as a teacher of School District No. 20, Charleston, S. C., was by reason of his alleged misconduct on December 24, 1964. * * * "[3] The other allegations in the complaint that defendants sought to punish plaintiff for his actions in protesting the policies of the owners and employees of the Shuler Barber Shop are not supported by allegations of specific facts, but to the contrary, these allegations are rebutted by plaintiff's own assertion that he was suspended because of his unlawful acts of being drunk, disorderly, and assaulting a police officer. The record shows that defendants took no action against plaintiff until after he was lawfully tried and convicted in the Charleston Municipal Court of the aforesaid criminal charges. An appeal to the Charleston County Court of General Sessions from this conviction has been made by plaintiff; however, in South Carolina an appeal from a conviction in a criminal case "has no effect whatever upon the judgment which, until reversed, 'stands unaffected by such appeal, except that it cannot be enforced by execution "until the appeal is finally disposed of." '" Parker v. State Highway Department, 224 S.C. 263, 78 S.E.2d 382 [1953]; State v. Prater, 27 S.C. 599, 4 S.E. 562 [1887]. See also 18 C.J.S. Conviction, page 97.

The facts before the court as set out herein are not in dispute by the parties and clearly show that plaintiff has no cause of action against these defendants under the civil rights statutes for any deprivation of constitutional rights regarding his arrest and conviction arising out of the incident of December 24, 1964.

Plaintiff argues, however, that the action of the school board in suspending him from his position as a teacher in Burke High School without notice and a hearing deprives him of due process guaranteed by the Fourteenth Amendment to the Constitution. He does not contend that the action of the School Board in suspending him without prior notice or a hearing was any different from such actions as the School has taken or would take in suspending or discharging any and all other teachers, both white and colored, who may be determined by the School Board to be unfit to be retained as a teacher in said School District No. 20.

■ No individual as a matter of right has a constitutional privilege to be in the public employ as a school teacher; and all teachers in public schools are subject to reasonable rules and regulations by state and local school officials.[4]

■ State or local officials cannot, however, deprive a teacher of any constitutional right, by imposing unreasonable or unlawful conditions as a necessary adjunct to employment; nor should such rights be denied because of race or color.

Under the Statute Law of South Carolina, school trustees in general have authority to employ and discharge teachers,[5] and School District No. 20 has specifically been granted the power to elect and dismiss teachers[6] subject to the su-

---

3. Paragraph 6 [c] of plaintiff's complaint reads as follows: "That Plaintiff is informed and believes that the action of the Defendants in dismissing him from his position as a teacher of School District No. 20, Charleston, South Carolina, was by reasons of his alleged misconduct on December 24, 1964, as set forth above."

4. Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 [1952]; Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 [1951].

5. § 21–230 [2], 1962 Code of Laws for South Carolina, provides: "§ 21–230. General powers and duties of school trustees.—The board of trustees shall also: [2] *Employ and discharge teachers.* Employ teachers from those having certificates from the State Board of Education, fix their salaries and discharge them when good and sufficient reasons for so doing present themselves, subject to the supervision of the county board of education."

6. § 21–1677 [4], 1962 Code of Laws for South Carolina, provides: "§ 21–1677. Further duties and powers of trustees

772

pervision of the County Board of Education. Plaintiff has never requested a hearing before any board, however he has the right to appeal the decision of the School Board to the County Board of Education, and thence to the State Court of Common Pleas, Section 21–247 et seq., South Carolina Code of Laws for 1962. He admits that he has not pursued the administrative remedies provided by the South Carolina Statutes, but alleges that they do not provide an adequate remedy to redress his damages.

Thus, the questions before the court are: [1] Did the failure of the School Board to give plaintiff prior notice and a hearing before suspending him from his teacher's position constitute a denial of due process?; and [2] Do the administrative remedies provided by the South Carolina Statutes provide plaintiff with an adequate remedy to redress any alleged wrongs perpetrated by the School Board?

■ It must be noted at the outset of this inquiry that school authorities indeed have a duty to the public to maintain close scrutiny and supervision of all teachers at all times to insure their fitness and competence for the important task of educating young and impressionable students. In Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716 at page 720, 71 S.Ct. 909, at page 912 [1951] the United States Supreme Court said:

"We think that a municipal employer is not disabled because it is an agency of the State from inquiring of its employees as to matters that may prove relevant to their fitness and suitability for the public service. Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust. Both are commonly inquired into in determining fitness for both high and low

positions in private industry and are not less relevant in public employment."

In the later case of Adler v. Board of Education, 342 U.S. 485, 493, 72 S.Ct. 380, 385 [1952], the Court again stated, in adhering to the principles previously announced in Garner, supra:

"A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds towards the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted. One's associates, past and present, as well as one's conduct, may properly be considered in determining fitness and loyalty."

The Supreme Court has also declared that fitness for teaching depends on a broad range of factors, and that there is no requirement in the Federal Constitution that classroom conduct must be the sole basis for determining fitness. Beilan v. Board of Public Education, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414 [1958].

■■ In accordance with the above principles, the Charleston School Board had a duty to the public to consider Mr. Bradford's fitness to remain in a teaching position following his conviction in the municipal court on charges of being drunk, disorderly, and assaulting a police officer. This court should not interpose and substitute its judgment and authority for that of the local and state authorities unless and until such actions are clearly warranted to safeguard and protect rights guaranteed by the Constitution.

[School Dist. 20].—In addition to all other powers and duties, the board of trustees shall have the following: [4] To elect and dismiss teachers, prescribe

their duties and terms of office and make rules for the government of the public schools."

What constitutes "due process" within the meaning of the Fourteenth Amendment cannot be precisely defined. It must be decided in the light of that which is just and reasonable, considering all factors, and cannot unduly confine those officials who have the responsibility of governing. As stated by Mr. Justice Frankfurter in his concurring opinion in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 163, 71 S.Ct. 624, 644, 95 L.Ed. 817 [1951]:

> "The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished—these are some of the considerations that must enter into the judicial judgment."

Considering the above factors the heavy responsibilities borne by school officials, and their solemn duty to the public to engage and keep only fit persons in teaching positions, I must conclude that plaintiff has not been denied "due process" by not having a hearing prior to his suspension by the School Board. The action of the School Board is not final. Plaintiff has an opportunity, indeed the right, to have a full hearing before the County Board of Education, the State Board of Education and the State Courts, any of which bodies can order that he be reinstated in his teaching position. If defendants have acted in an arbitrary, capricious and unwarranted manner in suspending plaintiff under the circumstances here, he has adequate remedy at law for breach of his contract.[7] That controversy, however, would be peculiarly within the jurisdiction of the courts of the State of South Carolina and not this court since there is no diversity of citizenship between plaintiff and defendants. The federal jurisdiction should not be available to every potential litigant who claims to have been wrongfully discharged from his employment, under the guise of the denial of "due process", where state administrative remedies are adequate to redress his alleged wrongs. I fail to see any constitutional question involved in plaintiff's discharge under the admitted facts of this case.

I find therefore that the administrative remedies provided by the laws of South Carolina are adequate and do provide plaintiff a complete remedy to redress any wrongs which may have been perpetrated by School District No. 20 officials; further, that plaintiff's complaint fails to state a claim upon which relief can be granted. It is, therefore,

Ordered that plaintiff's complaint be, and it hereby is, dismissed with prejudice.

Let judgment be entered accordingly.

---

7. § 21–111 of the 1962 Code of Laws for South Carolina provides that each School District may sue and be sued in its own name as a body public.