Clarence ANTHONY, et al., Plaintiffs-
Appellants,

v.

MARSHALL COUNTY BOARD OF EDU-
CATION, et al., Defendants-Appellees.

No. 26432.

United States Court of Appeals
Fifth Circuit.

April 15, 1969.

Louis R. Lucas, Memphis, Tenn., John
L. Maxey, II, Stanley L. Taylor, Jr., Holly
Springs, Miss., Jack Greenberg, Melvyn
Zarr, Franklin E. White, New York City,
for appellants.

Robert P. Crutcher, Holly Springs,
Miss., Semmes Luckett, Clarksdale,
Miss., Hardy Lott, Greenwood, Miss., Joe
T. Patterson, Atty. Gen., of Mississippi,
William A. Allain, Asst. Atty. Gen., Jack-
son, Miss., for appellees.

Nathan Lewin, Atty., Dept. of Justice,
Washington, D. C., amicus curiae.

Stephen J. Pollak, Asst. Atty. Gen.,
Robert T. Moore, Merle W. Loper, Attys.,
Dept. of Justice, Washington, D. C.,
H. M. Ray, U. S. Atty., for the U. S. as
amicus curiae.

Before AINSWORTH and SIMPSON,
Circuit Judges, and MITCHELL, Dis-
trict Judge.

AINSWORTH, Circuit Judge:

This class action was brought by Ne-
gro school children, represented by their
parents, to desegregate the two public
school districts of Marshall County, Mis-
sissippi. Appellants sought the adoption
of one of two proposed systems for inte-
gration: (1) pairing of the existing
school facilities, or (2) a system of uni-
tary geographic school zone lines, in lieu
of the existing "freedom-of-choice" plans
adopted in the 1965–66 school year. They
aver that after three years of operation,
"freedom of choice" continues to main-
tain a school system in which pupils are
segregated by race. In the interim, be-
tween the filing of the complaint and the
hearing by the District Court, the Su-
preme Court rendered its recent decisions
in the public school desegregation triad
of Green v. County School Board of New

Kent County, Va., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Raney v. Board of Education of Gould School District, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968); and Monroe v. Board of Commissioners of City of Jackson, Tenn., 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968).[1] The District Judge rejected the alternative plans suggested by appellants and concluded that under the command of *Green*, the most feasible and the only workable method of bringing meaningful desegregation to the schools was to continue under the existing "freedom-of-choice" plans.

At issue, therefore, is the question of whether or not the "freedom-of-choice" plans of the Marshall County School District and the Holly Springs District constitute adequate compliance with the Boards' affirmative duty, as announced by the Supreme Court in Brown v. Board of Education of Topeka, Kansas (Brown II), 349 U.S. 294, 300–301, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955), "to achieve a system of determining admission to the public schools on a nonracial basis," which duty is further elucidated and emphasized in *Green*, 391 U.S. at 439, 88 S. Ct. at 1694, as requiring the Boards "to come forward with a plan that promises realistically to work, and promises realistically to work *now*" in a "system without a 'white' school and a 'Negro' school, but just schools." Id. at 391 U.S. 442, 88 S.Ct. 1696.[2]

Both of appellee school districts are located in Marshall County, Mississippi. The Holly Springs Municipal Separate School District encompasses the town of Holly Springs and certain additional territory. The Marshall County District is composed of the remainder of Marshall County. The total school population for the county is 7,542, of which 5,474 are Negroes and 2,068 are white. The Holly Springs District has two elementary and two secondary schools. The Marshall County District has two elementary and four secondary schools. Geographically the county is not segregated, Negroes and whites being distributed generally throughout the area.

Both districts are operating under a "freedom-of-choice" plan which was adopted in 1965. Prior to the 1965–66 school year, however, both systems were totally segregated. Subsequent to 1966, federal financial assistance was terminated because of failure to comply with guidelines of the United States Department of Health, Education and Welfare.

*The Holly Springs District*

The entire school population of this district is 2,743, of which 1,868, or 68.1 per cent, are Negroes. There are two formerly white and two all-Negro schools. During the 1967–68 school term, only 21 of the 1,868 Negro children (approximately 1.1 per cent) attended the white schools. At the end of the 1967–68 school term, 60 Negro students (approximately 3.2 per cent) indicated a choice to attend white schools. No white student from this district has ever attended a Negro school.

1. In both Green v. County School Board of New Kent County, Va., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), and Raney v. Board of Education of Gould School District, 391 U.S. 441, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968), the Supreme Court examined "freedom-of-choice" desegregation school plans adopted by the respondent school boards, and concluded that under the existing circumstances the plans did not constitute adequate compliance with the boards' responsibility under Brown v. Board of Education of Topeka, Kansas, 349 U.S. 294, 300–301, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (Brown II), "to achieve a system of determining admission to the public schools on a nonracial basis." In Monroe v. Board of Commissioners of City of Jackson, Tenn., 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968), a "free-transfer" plan was similarly weighed and found wanting under the circumstances of that case.

2. Cf. United States v. Jefferson County Board of Education, 5 Cir., 1966, 372 F.2d 836, aff'd en banc, 1967, 380 F.2d 385, 389, in which we interpreted this duty as requiring a "unitary school system in which there are no Negro schools and no white schools—just schools."

*The Marshall County School District*

The entire school population of this district is 4,799, of which 3,606, or 75.1 per cent, are Negroes. There are three formerly white and four all-Negro schools. During the 1967–68 school term, only 22 of the 3,606 Negro children (approximately 0.6 per cent) attended the white schools. At the end of the 1967–68 school term, 64 Negro students (approximately 1.77 per cent) indicated a choice to attend white schools. No white student from this district has ever attended a Negro school.

In declining to order discontinuance of the "freedom-of-choice" plans and substitute therefor pairing or zoning, the District Court said that it based its ruling in part on the fact that white students would flee from public schools where Negro pupils heavily preponderated, and that there would be a "wholesale withdrawal" by white students. Such a conclusion is precluded by the clear mandate of the Supreme Court in *Green*.

There is a striking similarity between this case and the *Green* case, both as to facts and issues presented. In both cases the adequacy of a "freedom-of-choice" plan in compliance with the dictates of *Brown* was questioned, and the contention of the respective school boards was that they had discharged their *Brown*-imposed mandate by adopting a "freedom-of-choice" plan. In *Green*, as in this case, there was no residential segregation, both races residing throughout the county. Also in *Green*, as here, despite operation of the respective school systems since 1965 under a "freedom-of-choice" plan, not a single white child had ex-

pressed a choice to attend a Negro school. In *Green*, 15 per cent of the Negro students were attending formerly white schools as compared to the much lower figures here of 3.2 per cent in the Holly Springs District and 1.77 per cent in the Marshall County District.[3] In rejecting the School Board's "freedom-of-choice" plan as an insufficient step to convert to a unitary system, the Supreme Court in *Green* noted, 391 U.S. at 441, 88 S.Ct. at 1696:

> " * * * 85% of the Negro children in the system still attend the all-Negro Watkins school. In other words, the school system remains a dual system. Rather than further the dismantling of the dual system, the plan has operated simply to burden children and their parents with a responsibility which Brown II placed squarely on the School Board. The Board must be required to formulate a new plan and, in light of other courses which appear open to the Board, such as zoning, fashion steps which promise realistically to convert promptly to a system without a 'white' school and a 'Negro' school, but just schools." (Emphasis added.) [4]

Based upon a comparison of the much smaller enrollment percentages in the present case with those in the *Green* and *Raney* decisions, we must conclude, *a fortiori*, that appellees' school systems remain dual systems and that "freedom-of-choice" plans have not been effective in eliminating the dual systems nor do they show any promise or prospect of doing so in the future. In U. S. A. v. Greenwood Sch. Dist., 5 Cir., 1969, 406 F.2d 1086, 1092, we held, in conformity with *Green*, that a "freedom-of-choice" plan under which less than 6 per cent of the Negro

---

3. These percentages represent the most favorable figures to appellees, based as they are on the number of Negro students who expressed a desire to attend a white school in the area at the close of the 1967–68 school term. The actual attendance percentages for that term were 1.1 per cent for Holly Springs District and 0.6 per cent for Marshall County District.

4. In Raney v. Board of Education of Gould School District, 391 U.S. 443, 88 S.Ct.

1697, 20 L.Ed.2d 727 (1968), the Supreme Court threw out a "freedom-of-choice" plan as unacceptable, and required the Board to formulate a new plan, where the evidence showed that not a single white child had sought to enroll in the all-Negro schools, and over 85 per cent of the Negro children in the school system still attend the all-Negro schools.

student population attended "has not done the job that is constitutionally required, i. e., the job of converting a dual system into a unitary system in which the separate tracks for Negro and white students are no longer identifiable."

Though the Supreme Court in *Green* expressly refused to declare the "freedom-of-choice" plan unconstitutional, the Court was careful to admonish that only where such a plan proved effective could it be acceptable. The lack of effectiveness of appellees' plans has been clearly demonstrated. In declining to hold a "freedom-of-choice" plan unconstitutional per se, in *Green,* the Supreme Court said:

"We do not hold that 'freedom of choice' can have no place in such a plan. We do not hold that a 'freedom-of-choice' plan might of itself be unconstitutional, although that argument has been urged upon us. Rather, all we decide today is that in desegregating a dual system a plan utilizing 'freedom of choice' is not an end in itself. As Judge Sobeloff has put it,

"'"Freedom of choice" is not a sacred talisman; it is only a means to a constitutionally required end—the abolition of the system of segregation and its effects. If the means prove effective, it is acceptable, but if it fails to undo segregation, other means must be used to achieve this end. The school officials have the continuing duty to take whatever action may be necessary to create a "unitary, nonracial system."' Bowman v. County School Board of Charles City County, 382 F.2d 326, 333 (C.A.4th Cir. 1967) (concurring opinion). Accord, Kemp v. Beasley, 389 F.2d 178 (C.A.8th Cir. 1968); United States v. Jefferson County Board of Education, supra.

"Although the general experience under 'freedom of choice' to date has been

such as to indicate its ineffectiveness as a tool of desegregation, there may well be instances in which it can serve as an effective device. Where it offers real promise of aiding a desegregation program to effectuate conversion of a state-imposed dual system to a unitary, nonracial system there might be no objection to allowing such a device to prove itself in operation. On the other hand, if there are reasonably available other ways, such for illustration as zoning, promising speedier and more effective conversion to a unitary, nonracial school system, 'freedom of choice' must be held unacceptable." *Green,* 391 U.S. at 439, 440, 88 S.Ct. at 1695, 1696.

In conformity with the Supreme Court's holdings in *Green* and companion cases, the "freedom-of-choice" plans under which appellee boards are operating can no longer be considered suitable methods under the circumstances presented here, for effectuating transitions to a unitary nondiscriminatory system, and the burden is upon the respective school boards to come forward now with realistic and workable plans.[5] As the Supreme Court said in *Green,* 391 U.S. at 438, 88 S.Ct. at 1694, " * * * a plan that at this late date fails to provide meaningful assurance of prompt and effective disestablishment of a dual system is * * * intolerable." The Supreme Court also said in that case that "The Board must be required to formulate a new plan and, in light of other courses which appear open to the Board, * * * fashion steps which promise realistically to convert promptly to a system without a 'white' school and a 'Negro' school, but just schools." Ibid., at 442, 88 S.Ct. at 1696. See also U. S. A. v. Greenwood Sch. Dist., 5 Cir., 1969, 406 F.2d 1086; Henry v. Clarksdale Sch. Dist., 5 Cir., 1969, 409 F.2d 682.[6]

5. Cf. Henry v. Clarksdale Sch. Dist., 5 Cir., 1969, 409 F.2d 682.

6. "The obligation of the district courts, as it always has been, is to assess the effec-

tiveness of a proposed plan in achieving desegregation. There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter

The judgment of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

must be assessed in light of the circumstances present and the options available in each instance. It is incumbent upon the school board to establish that its proposed plan promises meaningful and immediate progress toward disestablishing state-imposed segregation. It is incumbent upon the district court to weigh that claim in light of the facts at hand and in light of any alternatives which may be shown as feasible and more promising in their effectiveness." *Green*, 391 U.S. 439, 88 S.Ct. 1695.