Michael TRISTER et al., Plaintiffs-Appellants,

v.

UNIVERSITY OF MISSISSIPPI et al., Defendants-Appellees.

No. 26682.

United States Court of Appeals Fifth Circuit.

Oct. 9, 1969.

Dissenting Opinion Oct. 17, 1969.

Rehearing Denied and Rehearing En Banc Denied Nov. 20, 1969.

Armand Derfner, James A. Lewis, Jackson, Miss., Richard B. Sobol, New Orleans, La., for appellants.

Semmes Luckett, Chester H. Curtis, Clarksdale, Miss., for appellees.

Before AINSWORTH and SIMPSON, Circuit Judges, and MITCHELL, District Judge.

SIMPSON, Circuit Judge:

Appellants, Michael B. Trister and George M. Strickler, Jr. are two members of the faculty of the School of Law of the University of Mississippi who brought this action against the University, its Chancellor, the Dean of its Law School, and the Executive Secretary and members of the Board of Trustees of State Institutions of Higher Learning. The question between the parties is whether appellants have the right to be afforded part-time employment by the University while they work part-time for the North Mississippi Rural Legal Services Program.

Alleging that they had been denied civil rights secured by the Constitution and by the laws of the United States within the meaning of 42 U.S.C. § 1983, appellants sought a declaratory judgment that the acts of the defendants-appellees were illegal and unconstitutional, and asked for an injunction requiring defendants to offer to them terms of employment which would allow appellants to participate in the Legal Services Program. The case came on for a hearing before the district court as an application for preliminary injunction. During the course of the hearing it appeared that all the issues involved had been fully developed along with all the evidence that either side had to offer. Thereupon the Court, with the expressed approval of all parties, proceeded with the matter as if upon final hearing. Rule 65(a) (2) F.R.Civ.P. The Dean of the Law School was dismissed as a defendant by the Court with the consent of the plaintiffs-appellants. The trial court, in lieu of Findings of Fact and Conclusion of Law filed a written opinion which is not published. Rule 52(a) F.R. Civ.P. The essential holding below was that the court lacked authority to direct the terms upon which the University may contract with the plaintiffs; that the action of the University of which plain-

tiffs complained had been based upon sound academic reason; and that the complaint should be dismissed on all issues. This appeal is from the order of the Court denying appellants' motions for an injunction and for declaratory judgment and dismissing their complaint on the merits. On Fourteenth Amendment equal protection grounds we reverse and remand for appropriate relief.

The background of this controversy is the relationship between the University of Mississippi School of Law and the North Mississippi Legal Services Program of the Office of Economic Opportunity. In April of 1966 the Law School and the Office of Economic Opportunity entered into a contract for a pilot program to provide legal services to the poor in an area surrounding the county in which the University of Mississippi is located. One purpose of the program was to afford an opportunity for clinical training of law school students, who would be assisted by lawyers engaged in the active practice of law in that area. The contract ended on January 31, 1968, but pursuant to a letter of intent issued by the Office of Economic Opportunity the program was continued until its cancellation on June 30, 1968 at the direction of the Chancellor of the University. Subsequent to that time the program continued under the sponsorship of another institution.

The plaintiffs below were associate professors of law who had participated in the work of the Legal Services Program as a part of their duties. Late in 1967 appellants and the Dean of the Law School discussed their employment during the 1968–69 academic year, and it was agreed that a part of their duties would consist of work with the Legal Services Program. During the spring of 1968 it became apparent that the Legal Services Program was not looked upon favorably by some political and civic groups, and the program was discussed and testimony relative to it received at State legislative committee hearings. When Legal Services filed a school desegrega-

tion suit, the Chancellor was asked by the Executive Secretary of the Board of Trustees whether the suit had been filed by members of the Law School faculty. The Executive Secretary raised the question of faculty members having brought themselves into conflict with another agency of government in violation of a rule of the Board of Trustees. The Chancellor responded that the Legal Service lawyers who brought the School Suit [1] did not include faculty members and that he was immediately instructing the Dean of the Law School to terminate the Law School's connection with the Legal Services Program as soon as possible. The Chancellor wrote the Office of Economic Opportunity on June 12, 1968, and terminated the Law School's agreement with Legal Services. The Dean of the Law School reported to the Chancellor the Law School faculty's unanimous vote to continue the offer to these plaintiffs of employment that would permit them to teach part-time and work for Legal Services part-time, and recommended that plaintiffs have the option of remaining either full-time or part-time with the University with the understanding that their part-time activity would be employment by Legal Services. The Chancellor responded in writing that "members of the faculty of the School of Law will no longer be associated with the OEO program after its termination on or about June 30, 1968." There was a brief misunderstanding between the Chancellor and the Dean of the Law School as to whether the rule forbade teachers to participate in the Legal Services Program in their free time on an uncompensated basis. The Dean wrote the Chancellor that he had been mistaken in regard to his statement concerning the free-time activities of faculty members, and said that he had asked that plaintiffs be instructed that if they returned to work at the law school there would be no restriction upon their free-time activities save only those imposed by regulations by the Board of Trustees, the University and professional associations, and that he had instructed all faculty members that while employed by the Law School they could not be employed by the Legal Services Program. The Chancellor's July 10 letter [2] to the Dean indicated that the following was a "basic premise about which there should be no disagreement:"

"After June 30, 1968, no person who is employed by the Rural Legal Services Program of the Office of Economic Opportunity shall be employed as a member of the faculty of the School of Law of the University of Mississippi nor shall the employment of any member of the faculty of the School of Law of the University of Mississippi be continued if such faculty member elects to be employed concurrently by the Rural Legal Services Program of the Office of Economic Opportunity."

On July 18 the Dean wrote the plaintiffs that the Chancellor had instructed

---

1. For the conclusion of this law suit, see Anthony v. Marshall County Board of Education, 5 Cir. 1969, 409 F.2d 1287.

2. Appended to this letter was the following quoted excerpt from the November 17, 1966 Minutes of the Board of Trustees of Institutions of Higher Learning:
   *Outside Employment Policies*
   The following policy relating to outside employment was approved.
   Outside employment, or practice of profession, by members of faculty and staff of the several institutions of higher learning is authorized, provided (1) that it does not interfere with the regular work of the employee, (2) that it is in reasonable amount, (3)

that it does not bring discredit to the institution and that it does not bring the employee into antagonism with his colleagues, community, or the State of Mississippi, including the Board of Trustees of Institutions of Higher Learning. (4) that the official connection of the employee with the institution of higher learning is not used in connection with said employment, (5) and that employees wishing to engage in such employment or practice shall submit applications to their respective executive heads of institutions for approval before beginning or continuing such activity.

him that they must either accept or reject by July 22 the offers that had been made to them of full-time employment with the condition that acceptance of that offer would preclude employment with the Legal Services Program pursuant to the Chancellor's directive of July 10. In their response, plaintiffs referred to an oral agreement with the Dean under which, beginning in June 1968, each of these plaintiffs was to teach one course a semester and devote the rest of his professional time to serving as an attorney with the Legal Services Program. Plaintiffs asserted that the University was violating academic freedom, freedom of expression and association, and the right to equal protection in view of the fact that other faculty members at the Law School were permitted to teach on a part-time basis while practicing law, and because no claim had been made that plaintiff's ability to teach would be hampered by employment with the Legal Services Program. Plaintiffs on July 25 were asked to vacate their offices by July 27. They declined to do so and shortly thereafter filed this action.

There is in this case evidence suggesting that the Legal Services Program was not popular with members of the local bar, with members of the Board of Trustees, or with members of the Legislature. A proper disposition of this case does not require that any findings be made in this regard, however. It is not seriously controverted that the University could discontinue its participation in the Program, and that such action could be based upon any reason satisfactory to those charged with making such decisions.

The question to be decided in this case is the true basis upon which the defendants made the decision to require plaintiffs to devote their full time to the teaching of law, and whether a decision so based denied to plaintiffs any legally protected right. The parties here have framed differently the question that each

believes is presented for determination, and the resolution of this conflict is actually necessary for decision. Plaintiffs say that the question is whether a state university law school which permits outside and part-time employment may adopt a rule that singles out an OEO Legal Services Program as a sole activity in which faculty members may not be employed. Defendants contend that the true issue is whether a university has the right to refuse part-time employment to a faculty member when his outside employment, because of its requirements, will seriously interfere with the regular work for which he has been employed. The answer to each question is easy. The problem lies in deciding which question is presented in this case. A careful examination of the record shows the real issue is as plaintiffs have framed it. Defendants have denied plaintiffs the equal protection of the laws by imposing upon their activities restrictions that are different and more onerous than those imposed upon other professors in the same category.

■ We are not willing to take the position that plaintiffs have a constitutional right to participate in the Legal Services Program of the OEO, or in any other program. Nor do they have a constitutional right to engage in part-time employment while teaching part-time at the Law School. No such right exists in isolation. Plaintiffs, however, do have the constitutional right to be treated by a state agency in no significantly different manner from others who are members of the same class, i. e., members of the faculty of the University of Mississippi School of Law. In his answers to interrogatories the Dean of the School of Law provided several examples of outside legal work engaged in by full-time faculty members. Many of these examples probably amounted to comparatively little time and many of them were of the sort of legal research and writing that is traditionally engaged in by members of a law school faculty. In addition

to such examples, one answer of the Dean of the Law School was as follows:

"James W. Price, Edward P. Connell, Aron S. Condon, and Paul W. Derian all teach but are not full-time faculty members at the Law School. Mr. Price and Mr. Connell are both engaged in the private practice of law on a full-time basis, while Mr. Condon is in full-time practice with Lafayette County Rural Legal Services. Dr. Derian is a full-time member of the faculty at the University of Mississippi School of Medicine. Chief Justice William N. Ethridge, Jr. of the Mississippi Supreme Court is a part-time visiting lecturer who is not paid from University funds. William Joel Blass, Walter E. Chryst and L. V. Wathins, although considered full-time faculty members at the Law School, work either full or part time with the Legal Institute of Agricultural and Resource Development, jointly sponsored by Mississippi State University, the United States Department of Agriculture, and the Law School."

There was also evidence that the faculty of the Law School had unanimously voted to continue the offer of joint employment; that there had been no expression of dissatisfaction with the teaching performances of these plaintiffs; that, in fact, their records as teachers were satisfactory; that part-time employment was frequent, and that just a few weeks before the trial an offer of part-time employment had been made to a prospective teacher.

The trial judge's opinion states:

"The thrust of plaintiffs' complaint is that there has been a discrimination exercised against them by the University in that they were not offered part-time positions while positions of this type had been offered to others and that the present faculty contains part-time associate professors; that the reason for the discrimination is the plaintiffs' desire to continue their connection and work with Legal Services."

We agree with this characterization of the plaintiffs' complaint. We do not, however, agree with the additional statement of the Court that the "evidence in this case shows without dispute that to permit plaintiffs to work part-time for Legal Services and part-time as associate professors of law would be detrimental to some extent to the quality of instruction received by the students." Not only does the evidence not show this without dispute, but the evidence in fact strongly suggests that the opposite is true. Although the record contains some testimony to the effect that court appearances by law professors could interfere with their allocation of time with possible detriment to their students, determination of this question should not have been decisive below and has no bearing here. It misses the real point involved. The fact remains that this reason was not given as the basis for the decision respecting the plaintiffs here. On this point Johnson v. Branch, 4 Cir., 1966, 364 F.2d 177, cert. denied 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967) points our way to the controlling principle involved. In that case school board members had testified that they had not known of plaintiff-teacher's civil rights activity, or at least the extent of it, and had not based their decision not to renew her contract on that fact. The district court had nevertheless found that the plaintiff's civil rights activities consumed much of her time and interest, created dissension, and caused the board to refuse to renew her contract. The Fourth Circuit said that such a finding was "irrelevant because it is not the reason advanced by the Board members for refusing to execute her contract."[3] In

---

3. Judge J. Spencer Bell, for the Fourth Circuit en banc set out the basis for the holding:

The statute gives discretion to the school board in deciding whether or not to continue the employment of a teacher. Discretion means the exercise of judgment, not bias or capriciousness. Thus it must be based upon fact and supported by reasoned analysis. In

any event, the record here shows without contradiction that these plaintiffs had engaged in work with the Legal Services Program throughout the preceding school year and that their instructional efforts had not been hampered as a result. There was also testimony that while the bulk of law school instruction should be given by full-time professors, some outside involvement in actual practice tended to improve the teaching ability of professors. More important, however, is the fact that there were other members of the faculty of the University of Mississippi College of Law who engaged in part-time instruction and part-time or full-time practice of law. It appears clear that the only reason for making a decision adverse to appellants was that they wished to continue to represent clients who tended to be unpopular. This is a distinction that can not be constitutionally upheld. The University may well decide not to employ any part-time professors, and it may decide to forbid the practice of law to every member of its faculty. What the University as an agency of the State must not do is arbitrarily discriminate against professors in respect to the category of clients they may represent. Such a distinction is an abuse of discretion which denies to plaintiffs the equal protection of the law guaranteed to them by the Fourteenth Amendment.

The judgment appealed from is reversed. Upon remand the district court is directed to grant to appellants injunctive and declaratory relief consistent with the views here expressed.

Reversed and remanded.

MITCHELL, District Judge (dissenting):

While it is fundamental that no person has a constitutional right to public employment, either as a school teacher or in any other position,[1] it is equally fundamental that the right to public employment may not be subjected to unreasonable conditions.[2] However, all teachers and persons in public employment are subject to reasonable rules and regulations.[3] The regulation which barred plaintiffs from part-time employment with the University if they worked with the OEO's Rural Legal Services Program (hereinafter referred to as the Program) was, as reflected by the record, a reasonable one, designed to insure the quality of legal education offered at the University. As noted in the majority opinion (p. 501), the Chancellor instructed the Dean of the Law School, in writing, that

"Members of the faculty of the School of Law will no longer be associated with the OEO Program after its termination on or about June 30, 1968."

Subsequently, in a letter to the Chancellor, the Dean admitted that he had been mistaken in regard to his statement con-

---

testing the decision of the school board the district court must consider only the facts and logic relied upon by the board itself. It is "a simple but fundamental rule of administrative law * * * that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside for the administrative agency." S.E.C. v. Chenery Corp., 332 U.S. 194, 196, 67

S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). Similarly the district court may not usurp the discretionary power of the school board but must judge the constitutionality of its action on the basis of the facts which were before the Board and on its logic." 364 F.2d at 181.

1. Parker v. Board of Education of Prince George's County, Md., 237 F.Supp. 222 (D.Md.–1965) aff'd. 348 F.2d 464 (CA 4–1965), cert. den. 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543 (1966).

2. McLaughlin v. Tilendis, 398 F.2d 287 (CA 7–1968); Williams v. Kimbrough, 295 F.Supp. 578 (W.D.La.–1969).

3. Bradford v. School District No. 20, 244 F.Supp. 768 (ED S.C.–1965).

cerning the free-time activities of faculty members; stated that he had informed plaintiffs that if they returned to work at the Law School there would be no restriction upon their free-time activities except those imposed by regulations by the Board of Trustees, the University and professional associations; and that he had instructed all faculty members that they would not be permitted to be employed by the Program while employed by the Law School.[4]

The record amply substantiates that due to the vast amount of work the plaintiffs would have been obligated to perform under the Program, the University was justified in determining that they could not satisfactorily fulfill their teaching responsibilities and, at the same time, perform additional duties with the Program.

Indeed, when Mr. McDougal, one of the participants in the Program was asked, "Have you been hampered up to now, Mr. McDougal, in the performance of your teaching duties by your activities with Legal Service?", he replied "I think, without a doubt, I would have to say, yes, sir."[5] He further testified that the Program engaged in all types of legal work, including divorces, garnishments, taking care of claims by creditors, desegregation cases, suits against the State Welfare Department and the whole range of legal problems that the poor might encounter today.[6]

Plaintiffs contend that the pivotal issue is whether a State University Law School, which permits outside and part-time employment, may adopt a rule that singles out an OEO Rural Legal Services Program as the sole activity in which its faculty members may not be employed. Defendants contend that the true issue is whether a University has the right to refuse part-time employment to a faculty member when his outside employment, because of its peculiar requirements, will seriously interfere with his regular work at the University.

The majority has concluded that the record reveals the real issue to be as postured by plaintiffs, i. e., defendants have denied plaintiffs the equal protection of the law guaranteed to them by the Fourteenth Amendment by imposing on their activities restrictions that are different and more onerous than those imposed on other professors in the same category. Notwithstanding, the majority concludes that

> "We are not willing to take the position that plaintiffs have a constitutional right to participate in the Legal Services Program of the OEO, or in any other program,"

with which I heartily concur.

But I cannot agree with the majority's holding, i. e., that plaintiffs were denied equal protection of the law because the University imposed restrictions of their activities which were different and more onerous than those imposed upon other faculty members in the same category. That such is not the case is clearly demonstrated by the record: *all* members of the Law School faculty are proscribed from employment in the Program—and they have held that "we are not willing to take the position that plaintiffs have a constitutional right to participate in the Legal Services Program". The University having ruled that none of its faculty members, Law School or otherwise, could participate in the Program, there can be no discrimination *since all have been treated equally.* None has been subjected to more onerous conditions than any other in the same category.

Neither the Chancellor nor the Dean of the Law School has proscribed plaintiffs from part-time employment in other legal fields—only from part-time employment in the Program.

4. P. 499, majority opinion. Appended to this letter was a quote from the November 17, 1966 Minutes of the Board of Trustees of Institutions of Higher Learning referring to Outside Employment Policies which is set forth on p. 501 of the majority opinion.

5. Pp. 41, 42, Record.

6. P. 6, Record.

This regulation is reasonable, valid and based upon sound academic reasoning which is fully supported by the record, i. e., the testimony of Mr. McDougal, a participant in the Program who, when asked if he had been hampered in the performance of his teaching duties by participating in the Program, unequivocally answered " * * * without a doubt * * * yes * * *."

It is a matter of public knowledge that many law schools must necessarily rely upon lawyers engaged in full time private practice to teach certain subjects, especially those dealing with the more practical, as differentiated from the academic, aspects of law practice. A classic example is the School of Law of Loyola University of the South, New Orleans, which has 27 law instructors only 14 of whom are full-time faculty members, the other 13 being lawyers engaged in full time private law practice or judicial duties. A former president of the Maritime Law Association of the United States takes time from his extensive practice in New Orleans to commute to Baton Rouge to teach maritime law in the Law School of Louisiana State University and several lawyers in full-time private practice in Baton Rouge teach classes at the same Law School. Tulane University's School of Law has only 13 full-time law professors and must rely heavily on New Orleans lawyers as evidenced by the fact that it uses 11 full-time private practitioners as part-time instructors.

The University has issued no regulation which would prohibit plaintiffs, either as full or part-time private legal practitioners from teaching in its School of Law or, conversely, from full-time teaching at the School of Law and engaging in part-time law practice, so long as their outside activities do not interfere with the performance of their duties at the University.

Indeed Dr. Fortune, Chancellor of the University, specifically stated that there was no prohibition against professors participating in the Program on their own time.

While it might well be argued that the University of Mississippi is discriminating against the Program, this is not the issue before the Court but, in my opinion, it is the trap into which the majority has fallen.

Further, the majority concedes that it is not willing to take the position that plaintiffs have a constitutional right to participate in the Rural Legal Services Program of the OEO or in any other program, nor do they have a constitutional right to engage in part-time employment while teaching part-time at the Law School as, in isolation, no such right exists (pp. 501–502 majority opinion). To reiterate, the majority merely holds that plaintiffs have a constitutional right to be treated by a state agency in no significantly different manner from others who are members of the same class, i. e., members of the faculty of the University of Mississippi School of Law, in which holding I heartily concur.

Succinctly, one, and only one, issue is before the Court: is it permissible for a University to deny employment to faculty members whose outside activities would hinder the fulfillment of their duties at the University. Since the uncontroverted testimony of Mr. McDougal makes it abundantly clear that employment with the Program was detrimental to the fulfillment of his duties as a member of the faculty of the School of Law, and plaintiffs were *identically situated*, there was, under these circumstances, only one course of action left open to the University—forbid all of its faculty members from engaging in that Program. To reiterate, it is fundamental that all teachers or other persons in public employment are subject to reasonable rules and regulations.[7]

A University should and must be able to establish sensible guidelines for the outside activities of its teaching personnel. To hold that certain activities are permissible and at the same time pro-

---

7. Bradford v. School District No. 2, *supra.*

scribe others which it may deem to be incompatible with the fulfillment of its academic responsibilities is clearly not an invasion of any party's civil rights, particularly when its ruling is unequivocally supported by uncontroverted evidence.

Unfortunately, in my opinion, the majority has misconceived the basic issue by confusing *academic freedom* with *academic responsibility*. While academic freedom and academic responsibility are compatible there is, nevertheless, a clear line of demarcation between them and a University may legitimately proscribe any activities which it deems to be detrimental to *academic responsibility*. A University has a legitimate right to sanction some outside activities on the part of its faculty members and, at the same time, prohibit others which would impede and interfere with their academic responsibilities.

The majority makes much of a comparison of the work which plaintiffs would do in the Program with that done by others who teach part-time but who are not full-time faculty members at the Law School.[8] The University has done nothing which proscribes the plaintiffs from participating in exactly the same type of activity as any of the others who are engaged as part-time faculty members. Had it done so, I would join the majority with alacrity but until it does, I am convinced the majority is in error. Clearly, the University acted within the well settled bounds of Johnson v. Branch,[9] which held:

" * * * the * * * court may not usurp the discretionary power of the school board but must judge the constitutionality of its actions on the basis of the facts which were before the

Board *and on its logic.*" (Emphasis added.)

Equally apropos is the legal principle that a reviewing court will not undertake to substitute its judgment for that of an administrative body unless it appears from the evidence that the action of the administrative body was arbitrarily or capriciously performed. Since the record substantiates that: (1) the action of the University was neither arbitrary nor capricious; (2) plaintiffs' employment would have indeed interfered with their teaching duties; (3) the University uniformly proscribed employment of any and all of its faculty members, not just plaintiffs, by the Rural Legal Services Program; (4) and the University did not proscribe plaintiffs from engaging in any other form of part-time employment, including employment during their non-duty hours, which regulation equally applied to all other members of the law school faculty, I can arrive at no other conclusion but that the judgment of the district court should be affirmed.

Accordingly, I respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

MITCHELL, District Judge:
I dissent.

8. Messrs. Price and Connel both being engaged in full-time law practice; Mr. Condon being in full time practice with the Lafayette County Rural Legal Services, and Dr. Derian being a full time member of the faculty at the University School of Medicine. Other part-time professors are the Chief Justice of the Mississippi Supreme Court as a visiting lecturer, and Messrs. Blass, Chryst and Wathins who, although considered full-time faculty members at the Law School, work either full or part-time with the Legal Institute of Agriculture and Resource Development, jointly sponsored by Mississippi State University, the United States Department of Agriculture and the Law School.

9. 364 F.2d 177 (CA 4–1966).