Anthony T. LEE et al., Plaintiffs,

United States of America, Plaintiff-Intervenor and Amicus Curiae,

National Education Association, Inc., Plaintiff-Intervenor,

v.

MACON COUNTY BOARD OF EDUCATION et al., Defendants.

Civ. A. No. 604–E.

United States District Court, M. D. Alabama, Eastern Division.

June 12, 1970.

Solomon S. Seay and Fred D. Gray, Gray, Seay & Langford, Montgomery, Ala., for plaintiffs and plaintiff-intervenor, N.E.A.

Jerris Leonard, Asst. Atty. Gen., Robert Pressman and Craig M. Crenshaw, Jr., Attys., Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., and Ira DeMent, U. S. Atty., Montgomery, Ala., for the United States.

Richard S. Manley, Demopolis, Ala., for the Pickens County Bd. of Ed.

Before RIVES, Circuit Judge, and GROOMS and JOHNSON, District Judges.

## ORDER

PER CURIAM.

On August 6, 1969, this Court ordered the United States through its Office of Education, Department of Health, Education and Welfare, to file on or before December 1, 1969, a plan whereby, effective with the commencement of the 1970–71 school year, the dual school system based upon race operated by the Board of Education for Pickens County, Alabama, will be effectively and completely disestablished. Pursuant thereto, the United States filed such a plan on December 1, 1969. By order entered December 10, 1969, this Court afforded the Pickens County Board of Education an opportunity to show cause why the plan as proposed by the United States should not be placed into effect with the commencement of the 1970–71 school year.

On February 12, 1970, the Pickens County Board of Education filed, in writing, its objections to the plan proposed by the United States for the Southern Attendance Zone and proposed, in lieu thereof, that it be allowed to continue to operate in the Southern Attendance Zone two separate campuses to be named Aliceville South Campus (formerly Aliceville High School and Aliceville Elementary School) and the Aliceville North Campus (formerly R. J. Kirksey High School and R. J. Kirksey Elementary School). The Board further proposed to assign all white students in the Southern Attendance Zone area, commencing with the school year 1970–71, to the Aliceville South Campus and to assign Negro students in the Southern Attendance Zone to the Aliceville South Campus on a distributive basis from grades 1 through 12 "so that the Negro enrollment at the Aliceville South Campus will be not less than 40% of the total enrollment at the Aliceville South Campus." The Board further proposed as to the Southern Attendance Zone to assign all other students—all of whom are Negroes—to the Aliceville North Campus. The Board, in addition, proposed to schedule certain classes exclusively in the Aliceville North Campus and others exclusively in the Aliceville South Campus and to shuttle students between the campuses.

In its response of February 12, the Pickens County Board of Education further proposed to assign the thirty white students residing in the Central Attendance Zone, who would, according to the plan of the United States, be assigned to the Pickens County Junior High School, to the Carrollton High School. The effect of this proposal would be to leave the Pickens County Junior High School attended only by Negro students.

This Court on February 14, 1970, ordered the United States and the Nation-

al Education Association, Inc., as plaintiff-intervenors, and the plaintiffs, to show cause why this Court should not approve the Board's proposed amendments to the desegregation plan filed by the United States through its Office of Education. The United States, the National Education Association, Inc., and the plaintiffs filed written objections to the amendments proposed by the Pickens County Board of Education. The matter was heard by the Court March 13, 1970.

Now, upon consideration of the plan filed by the United States through its Office of Education, the proposed amendments thereto by the Pickens County Board of Education, and the several objections to said proposed amendments, this Court is of the opinion that the amendments proposed by the school board to the desegregation plan filed by the United States through its Office of Education on December 1, 1969, may not be allowed. The Pickens County Board of Education has heretofore operated four pairs of black and white schools, offering grades 1 to 12, in four separate areas of Pickens County: Reform, Gordo, Carrollton and Aliceville. The reports filed with this Court by the Pickens County Board of Education, pursuant to the order of March 22, 1967, and the amendments thereto, reflect that the schools in Pickens County that have operated under the freedom-of-choice plan of desegregation have remained racially identifiable. No white students have attended any of the Negro schools, and the following table represents the percentage of Negro students who now attend or have attended formerly all-white schools:

| School Year | | Percentage of Negro Students |
|---|---|---|
| 1967–68 | — | .8% |
| 1968–69 | — | 1.7% |
| 1969–70 | — | 16.1% |

The dramatic increase for the school year 1969–70 in the percentage of Negro students who are attending formerly all-white schools was occasioned by this Court's order of August 6, 1969, requiring the Pickens County Board of Education, as a transitionary measure, to assign Negro students to each of the predominantly white schools; further, in the order of August 6, 1969, this Court made a formal finding that the freedom-of-choice plan of desegregation had not worked in the Pickens County school system and, based upon this finding, ordered the plan now under consideration filed by the United States.

The plan filed by the United States as prepared by the Office of Education, Department of Health, Education and Welfare, creates four attendance zones, within each of which is located one heretofore predominantly white and one heretofore all-black school facility. The Central Zone is divided into two areas for grades 5 to 9. The grade structure of the schools is reorganized so that, except as just mentioned with reference to the Central Zone, no two schools within the same zone will offer the same grade. In the Eastern Zone, the United States proposes that the Court order closed the Oak Lane Elementary School—an all-black school. The plan projects the following enrollments:

| | Grades | White | Negro | Total |
|---|---|---|---|---|
| EASTERN ZONE | | | | |
| Gordo High | 8–12 | 340 | 101 | 441 |
| Gordo Elementary | 1–7 | 561 | 199 | 760 |
| NORTHERN ZONE | | | | |
| Pickens County High | 6–12 | 433 | 417 | 850 |
| Hopewell Elementary | 1–5 | 359 | 330 | 689 |
| CENTRAL ZONE | | | | |
| Carrollton High | 1–12 | 312 | 279 | 591 |
| Pickens County Jr. High | 5–9 | 30 | 210 | 240 |
| SOUTHERN ZONE | | | | |
| Aliceville High | 9–12 | 200 | 470 | 670 |
| R. J. Kirksey Jr. High | 5–8 | 184 | 512 | 696 |
| R. J. Kirksey Elementary | 1–4 | 186 | 500 | 686 |

The plan as proposed by the United States undoubtedly provides for an administratively sound method of student assignment and for the disestablishment of the racial identifiability of the

schools operated by the Pickens County Board of Education. No less is allowed by the law. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969).

The proposal of the Pickens County Board as it concerns the Southern Zone would leave the Aliceville North Campus composed of 1,100 Negro students and no white students. As to the Central Zone, the Pickens County Junior High School is proposed by the school board as an all-Negro school. The operation of such a school system, or a part thereof, would under the facts of this particular case clearly violate the Fourteenth Amendment to the Constitution of the United States. The Board's proposal as to the Southern and Central Zones, without any question, would deliberately and effectively exclude Negroes from desegregated schools. The Board argues that the implementation of the plan as proposed by the United States in the Southern Zone of Pickens County will result in all the public schools in this zone being attended only by Negro students. The argument is based upon the thesis that, when a student body is composed of predominantly Negro students, the white students will flee. The law is clear that "white flight," or the threat thereof, from the public school system is not a valid consideration when formulating a plan for a unitary school system. The system's proposal, when analyzed, is nothing more than a proposal to assign Negro students to a predominantly white school up to a point where the total of the student body in a given school is 40 percent Negro. This is a proposal to achieve racial balance by assignment—but only to achieve a racial balance that will be acceptable to the white community. This Court, and each member thereof, is acutely aware of the customs, traditions and mores of the people in this section of the country. However, the law is clear that hostility to racial desegregation will not excuse a court for failing to order desegregation in instances where the Constitution requires it. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). The Supreme Court wrote most explicitly in Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968):

> Respondent's argument in this Court reveals its purpose. We are frankly told in the Brief that without the transfer option it is apprehended that white students will flee the school system altogether. "But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them." Brown II, 349 U.S. at 300, 75 S.Ct. at 756.

In Anthony v. Marshall County Board of Education, 409 F.2d 1287 (5 Cir., 1969), the United States Court of Appeals for the Fifth Circuit reversed the lower court for basing its ruling, in part, on the fact that the white students would flee from the public schools where Negro pupils heavily preponderated; and, again, the Fifth Circuit, in United States v. Indianola Municipal Separate School District, 410 F.2d 626, wrote on this point as follows:

> The school board explicitly argues that the faculty desegregation requirements we impose today will result in wholesale withdrawal of white students from the school system. The board believes that this will cause the schools to lose the public support they need to function effectively. The principal answer to these speculations is that those who disagree with constitutional imperatives cannot avoid their application. Monroe v. Board of Commissioners of City of Jackson, Tenn., et al., supra, note 3, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d [733] at 739. Our system of a government of laws surely could not survive if it were otherwise.

The most recent treatment of such a plan and argument as the Pickens County Board of Education now presents to this Court was given by the Fifth Circuit in United States v. Hinds County School Board, 417 F.2d 852 (1969) (the Mississippi school cases). There, the Fifth Circuit wrote:

> In the same vein is the contention similarly based on surveys and opinion testimony of educators that on stated percentages (e. g., 20%, 30%, 70%, etc.), integration of Negroes (either from influx of Negroes into white schools or whites into Negro schools), there will be an exodus of white students up to the point of almost 100% Negro schools. This, like community response or hostility or scholastic achievement disparities, is but a repetition of contentions long since rejected in Cooper v. Aaron, 1958, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5; Stell v. Savannah-Chatham County Bd. of Ed., 5 Cir., 1964, 333 F.2d 55, 61; and United States v. Jefferson County Bd. of Ed., 5 Cir., 1969, 417 F.2d 834 [June 26, 1969].

█ If these clear constitutional mandates were not enough, this Court would still be extremely hesitant to approve a proposal for the assignment of a certain percentage of Negro students to a predominantly white school for the purpose of achieving a racial balance. We would undoubtedly be met forthwith with a plethora of proposals to assign white students to predominantly Negro schools for the purpose of achieving such a racial balance. For example, in the Government's plan now under consideration, the projected enrollment for the Pickens County Junior High School in the Central Zone is 30 whites and 210 Negroes. How could we consistently deny a similar request if the Negro plaintiffs made it (and they undoubtedly would) to assign white students to the Pickens County High School for the purpose of achieving at least a 40–60% racial balance? As this Court has written upon many occasions, racial balance is not the criterion by which a court is to be guided in formulating a plan for the desegregation of a public school system. We decline to alter that philosophy. This Court sincerely hopes that the Pickens County Board of Education and the community leaders, particularly those in the field of public education, will meet the challenge the law imposes in this instance and will strive to continue to operate a public school system for the children in Pickens County, Alabama.

█ In accordance with the foregoing, it is the order, judgment and decree of this Court that the plan filed by the United States through the Office of Education, Department of Health, Education and Welfare, on December 1, 1969, as the same relates to the Pickens County school system, be and the same is hereby approved as to Sections I, II, III, IV, V, and VII. It is further ordered that the Pickens County Board of Education, the individual members thereof, and its superintendent, implement said plan of desegregation as hereinafter ordered supplemented, not later than the commencement of the school year 1970–71.

It is further ordered that said plan be supplemented as follows:

1. *Desegregation of Faculty and Other Staff*

In addition to the provisions set out in Section III of the plan herein ordered approved, as the same relates to faculty and other staff, the Board shall announce and implement the following policies:

[Following paragraph numbered 3 in Section III]

4. In the event that the system, in connection with its conversion to a unitary system, plans to dismiss or demote personnel, as those terms are used in the preceding numbered paragraph, a report containing the following information shall be filed with the

Court and served upon the parties by July 15, 1970:

> a. the system's "nonracial objective criteria" used in selecting the staff member(s) dismissed or demoted;

> b. the name, address, race, type of certificate held, degree or degrees held, total teaching experience and experience in the system and position during the 1969–70 school year of each person to be dismissed, or demoted, as defined in the preceding numbered paragraph; and in the case of a demotion, the person's new position during the 1970–71 school year and his salaries for 1969–70 and 1970–71;

> c. the basis for the dismissal or demotion of each person, including the procedure employed in applying the system's "nonracial objective criteria";

> d. whether or not the person to be dismissed or demoted was offered any other staff vacancy; and, if so, the outcome; and, if not, the reason.

2. *Majority to Minority Transfer Policy*

The school system shall permit a student attending a school in which his race is in the majority to choose to attend another school, where space is available and where his race is in the minority.

It is further ordered that the Pickens County Board of Education file with this Court, in writing, on or before August 1, 1970, and furnish copies to counsel for the plaintiffs and the plaintiff-intervenors, the United States and the National Education Association, Inc., a projection of the enrollment in each of the schools to be operated by the Pickens County school system for the 1970–71 school year, and the racial composition of the student body and the faculty and staff members in each of said schools. It is further ordered that the Pickens County Board of Education filed with this Court on or before September ber 30, 1970, and furnish copies to counsel for the plaintiffs and the plaintiff-intervenors, a written report on the actual enrollment in each of the schools operated by the Pickens County school system, and the racial composition of the student body and the faculty and staff members in each of said schools.