UNITED STATES of America, Plaintiff-Intervenor-Appellant,

v.

JEFFERSON COUNTY BOARD OF EDUCATION et al., Defendants-Appellees.

UNITED STATES of America, Plaintiff-Appellant,

v.

The BOARD OF EDUCATION OF the CITY OF BESSEMER et al., Defendants-Appellees.

Nos. 27444, 27445.

United States Court of Appeals Fifth Circuit.

June 26, 1969.

See also 5 Cir., 417 F.2d 846.

Nos. 27,444, 27,445:

Macon L. Weaver, U. S. Atty., E. Ray Acton, Asst. U. S. Atty., Birmingham, Ala., Lester N. Scall, Frank M. Dunbaugh, Robert T. Moore, Attys., U. S. Dept. of Justice, Washington, D. C., David H. Hood, Jr., Bessemer, Ala., U. W. Clemon, Oscar W. Adams, Jr., Birmingham, Ala., Norman C. Amaker, Jack Greenberg, New York City, Jerris Leonard, Asst. Atty. Gen., David L. Norman, Deputy Asst. Atty. Gen., Merle Loper, Atty., Dept. of Justice, Washington, D. C., for appellants.

Maurice F. Bishop, Birmingham, Ala., J. Howard McEniry, Jr., Bessemer, Ala., for appellees.

Before BELL and GOLDBERG, Circuit Judges, and ATKINS, District Judge.

BELL, Circuit Judge:

These appeals contest the order of the district court denying further relief in the Bessemer and Jefferson County Board of Education school desegregation cases from the standpoint of requiring student assignments on a basis other than freedom of choice. The appeals also complain of the denial of relief with respect to school construction programs. In the case of Bessemer, plaintiffs sought to enjoin the construction of specific schools. We reverse and remand for further proceedings.

These school boards were involved in the appeals which resulted in the pro-

mulgation of the model decree in United States v. Jefferson County Board of Education, 5 Cir., 1966, 372 F.2d 836, aff'd on rehearing en banc, 380 F.2d 385, cert. den., 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed. 2d 103. The model decree was entered in these cases on April 17, 1967. The motions for further relief sought to have this decree modified with respect to the assignment of students.[1]

The *Jefferson* model decree was promulgated to carry out the mandate of Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) which was to effectuate a transition from dual school systems to unitary racially nondiscriminatory systems. The model decree has resulted in 3.45 per cent of the Negro students in the Bessemer system attending school with white students for the year 1968–69. There are eleven schools in Bessemer; one all white, four all Negro, and six desegregated. The school population of the Bessemer system for the year 1968–69 was 8,615; 5,360 Negroes and 3,255 whites.

In the Jefferson County system, 3.43 per cent of the Negro students attended previously all white schools in the year 1968–69. The school population was 65,659; 47,830 whites and 17,829 Negroes. There were 105 schools; 48 remained all white, 28 all Negro, and 29 were desegregated.

In no school in either system has a white student chosen to attend a Negro school. There has been some assignment of both white and Negro teachers in each system to teach in schools where their race is in the minority but not to a marked degree.

The Supreme Court handed down additional definitive decisions in the school law area in 1968. Green v. County School Board of New Kent County, Virginia, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Raney v. Board of Education of Gould School Dist., Arkansas, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968); Monroe v. Board of Commissioners of the City of Jackson, Tennessee, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968). These cases emphasize the constitutional obligation of school boards to disestablish the dual school system by converting immediately to unified systems in which racial discrimination has been completely eliminated. "The transition to a unitary, nonracial system of public education was and is the ultimate end to be brought about * * *". 391 U.S. at p. 436, 88 S.Ct. at p. 1693. It was again stated that the burden was on school boards to come forward with plans to this end. In *Green* it was made plain that the use of freedom of choice would only be acceptable where " * * * it offers real promise of aiding a desegregation program to effectuate conversion of a state-imposed dual system to a unitary, nonracial system * * *." 391 U.S. at 440–441, 88 S.Ct. at 1696. The court went on to hold that "* * * if there are reasonably available other ways, such for illustration as zoning, promising speedier and more effective conversion to a unitary, nonracial school system, 'freedom of choice' must be held unacceptable." 391 U.S. at 441, 88 S.Ct. at 1696.

This court has subsequently reviewed freedom of choice plans in use in several school systems. The test has been in

1. These school systems were first before this court in United States v. Jefferson County Board of Education, 5 Cir., 1965, 349 F.2d 1021; and United States v. City of Bessemer Board of Education, 5 Cir., 1965, 349 F.2d 1021. They were recently here on a modification of the *Jefferson* decree with respect to faculty assignments. United States v. Board of Education of the City of Bessemer, 5 Cir., 1968, 396 F.2d 44. That same question is again pending in this court. No. 26,-582, United States, et al v. Board of Education of the City of Bessemer; No. 26,583, United States, et al v. Board of Education of the City of Birmingham; No. 26,583, United States et al v. Jefferson County Board of Education, 417 F.2d 846, argued and submitted November 21, 1968.

terms of the effectiveness to disestablish the dual system. In Adams v. Mathews, 5 Cir., 1968, 403 F.2d 181, 188, we said:

> "If in a school district there are still all-Negro schools or only a small fraction of Negroes enrolled in white schools, or no substantial integration of faculties and school activities then, as a matter of law, the existing plan fails to meet constitutional standards as established in *Green*."

See also Davis v. Board of School Commissioners of Mobile County, 5 Cir., 1969, 414 F.2d 69; Hall v. St. Helena Parish School Board, 5 Cir., 1969, 417 F.2d 801; Anthony v. Marshall County Board of Education, 5 Cir., 1969, 409 F.2d 1287; United States v. Indianola Municipal Separate School District, 5 Cir., 1969, 410 F.2d 626; Henry v. Clarksdale Municipal Separate School District, 5 Cir., 1969, 409 F.2d 682; United States v. Greenwood Municipal Separate School District, 5 Cir., 1969, 406 F.2d 1086; Graves v. Walton County Board of Education, 5 Cir. 1968, 403 F.2d 184; Board of Public Instruction of Duval County v. Braxton, 5 Cir., 1968, 402 F.2d 900.

■ It is clear that the freedom of choice has not disestablished the dual school systems in Bessemer or Jefferson County. The district court was of the view that it would in time but this probability will not meet the test of *Green* if there are other methods available which will disestablish the dual system now. For aught that appears, attendance zones would now accomplish the objective insofar as student assignment is concerned. The district court is directed on remand to consider zone assignments in each system.

The school construction program must also be considered by the district court to the end of insuring that the program will be used to disestablish the dual system. The Bessemer school construction of which plaintiffs complain is well under way. The schools can be desegregated in a meaningful manner on a zone assignment basis and thus any discrimination flowing from site location can be dissipated.

The sum of these cases is that they must be considered anew by the district court. In keeping with the teaching of *Green*, the time is now at hand to disestablish the dual school systems in Jefferson County and Bessemer. This will mean substantial changes in student and faculty assignment, in school bus routes, in school and extracurricular activities including athletic programs. Disestablishment, in the main, will come from local effort and through the cooperation of those having a direct interest in the education process.

The passage of time has made the task of disestablishment more complex. In Brown v. Board of Education, 347 U.S. 483, 495, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the question of implementing the decision was posed in terms of immediate implementation or a deliberate speed concept. Fn. 13. Immediate implementation was couched in terms of admitting Negro children forthwith to schools of their choice within the limits set by normal geographic school districting. This postulate was the subject matter of the second *Brown* decision where instead the deliberate speed concept was promulgated. 349 U.S. 294, 298–299, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). This simple remedy of immediate student admission, thought to be too drastic then appears by hindsight and today's standards, to be simple indeed.

From the standpoint of local cooperation, neither of the schools boards here have Negro members. This means that help from such sources will not be available to assist in disestablishing the dual systems. The plaintiffs in each case are, however, represented by Negro lawyers who reside in the Birmingham area and are familiar with the school systems and the neighborhood patterns. The school boards and their attorneys can receive valuable assistance from these lawyers in formulating disestablishment

plans. It became clear on oral argument in this court that the development of such a plan in each system can be readily accomplished by local effort[2] and this will be particularly true under the leadership of the district court.

The district court, in addition to this type of assistance, will also have available the resources of the Office of Education of the United States Department of Health, Education and Welfare under the terms of the following order which is similar to the order issued on June 3, 1968 in Davis v. Board of School Commissioners of Mobile County, supra. The order is also similar to the order issued in Wittenberg v. Greenville County School District, CA No. 4396, D.C.S.C. dated March 1, 1969, and, on remand in the Louisiana cases considered in Hall v. United States, supra. Moreover, it appeared from oral argument that assistance in formulating disestablishment plans may be available from the University of Alabama.

The order of the district court in each case is reversed and the cases are remanded to the district court with the following direction:

1. The cases shall receive the highest priority.

2. The district court shall forthwith request the Office of Education of the United States Department of Health, Education and Welfare to collaborate with the defendant school boards in the preparation of plans to disestablish the dual school systems in question. The disestablishment plans shall be directed to student and faculty assignment, school bus routes if transportation is provided, all facilities, all athletic and other school activities, and all school location and construction activities. The district court shall further require the school boards to make available to the Office of Education or its designees all requested information relating to the operation of the school systems.

3. The required disestablishment plans for the respective systems shall be effective for the beginning of the 1969–70 school term and shall be completed and approved by the district court no later than August 5, 1969.

4. The district court shall enter findings of fact and conclusions of law regarding the efficacy of any plan which is approved to immediately disestablish the dual school system in question. Jurisdiction should be retained, however, under the teaching of *Green*, 391 U.S. at 439, 88 S.Ct. 1689 and *Raney*, 391 U.S. at 449, 88 S.Ct. 1697, until it is clear that disestablishment has been achieved.

5. A copy of such findings, conclusions, and orders as are entered, together with copies of disestablishment plans, shall be lodged with the clerk of this court.

Because of the urgency of formulating and approving plans to be effective for the 1969–70 school term it is ordered as follows: The mandate of this court shall issue immediately and will not be stayed pending petitions for rehearing or certiorari. This court will not extend the time for filing petitions for rehearing or briefs in support of or in opposition thereto. Any appeals from orders or decrees of the district court on remand shall be expedited. The record on any appeal shall be lodged with this court and appellants' brief filed, all within ten days of the date of the order or decree of the district court from which the appeal is taken. Appellee's brief shall be due ten days thereafter. The court will determine the time and place for oral argument if allowed. No consideration will be given to the fact of interrupting the school year in the event further relief is indicated.

Reversed and remanded with directions.

---

2. There was testimony that white students would not attend formerly Negro schools. This is not a legal argument. Cf. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).