**UNITED STATES of America, by John MITCHELL, Attorney General, Plaintiff-Appellant,**

v.

The **BOARD OF EDUCATION OF BALDWIN COUNTY, GEORGIA et al.,** Defendants-Appellees.

No. 27281.

United States Court of Appeals Fifth Circuit.

July 9, 1969.

Floyd M. Buford, U. S. Atty., Macon, Ga., Kenneth L. Johnson, Fletcher M. Farrington, Merle W. Loper, Gary J. Greenberg, Attys., Dept. of Justice, Washington, D. C., Jerris Leonard, Asst. Atty. Gen., David L. Norman, Deputy Asst. Atty. Gen., for appellant.

George C. Grant, Macon, Ga., George S. Carpenter, Jr., Milledgeville, Ga., Martin, Snow, Grant & Napier, Macon, Ga., for appellees.

Before WISDOM and CARSWELL, Circuit Judges, and ROBERTS, District Judge.

WISDOM, Circuit Judge:

In a number of recent school desegregation cases this Court reversed the district court's orders approving a freedom of choice plan and remanded the cases with instructions that the court direct the school boards to submit a new plan based on zoning and pairing of schools. We suggested that the plan be formulated in the light of recent decisions of the United States Supreme Court [1] and of this Court.[2]

A freedom of choice plan is not per se unconstitutional.[3] Indeed, it may be better fitted for certain districts than an attendance zone plan when, for example, a school district has well-marked residential racial patterns. The indispensable element of any desegregation plan, the element that makes it work, is the school board's recognition of its affirmative duty to disestablish the dual system and all its effects. As this Court has often said, that duty is not

1. Green v. County Board of New Kent County, Virginia, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; United States v. Montgomery County Board of Education, 1969, 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263.

2. United States v. Choctaw County Board of Education, 5 Cir. 1969, 417 F.2d 838 (June 26, 1969); United States v. Jefferson County, 5 Cir. 1969, 417 F.2d 834 (June 26, 1969); Davis v. Board of Commissioners of Mobile County, 5 Cir. 1969, 414 F.2d 69 (June 3, 1969); Hall v. St. Helena Parish School Board, 5 Cir. 1969, 417 F.2d 801 (May 28, 1969); Adams v. Mathews, 5 Cir. 1968, 403 F.2d 181.

3. Green, 391 U.S. at 439, 88 S.Ct. 1689.

discharged simply by opening the doors of white schools to Negro applicants. The schools from which the Negroes come must be desegregated as well as the schools to which they go. And in any situation the school board should choose the alternative that promotes disestablishment of the dual system and eradication of the effects of past segregated schooling. For example, the sites of new schools should be selected so as to promote desegregation.

■ In the case now before the Court we conclude, after a study of the record, that the district court correctly decided that a freedom of choice plan was more suitable than a zoning plan for Baldwin County, Georgia. We base this conclusion on the county's racial residential patterns, the locations of the schools, and the projections for 1969–70. Of course, in the administration of a freedom of choice plan, no less than in the administration of a zoning plan, effective desegregation may require the closing, consolidation, or pairing of schools.

■ Our partial approval of the existing plan for Baldwin County is only tentative. We note that, as usual in school cases, the record is stale. The projections for the next year by comparison with this school year appear to be optimistic. That too is usual. We consider it essential, therefore, for the district court promptly to hold a hearing and to make findings of fact and draw conclusions of law as to the efficacy of the plan, as modified, to disestablish the dual system *now*.

■ It is significant that the rate of desegregation in 9 of the 11 schools within this system under its "freedom of choice" plan only barely passes muster when compared with the teachings of *Green*. There remain within the system two schools which are all-Negro. An all-Negro school simply does not meet Constitutional standards, and, as many recent decisions of this Court have em-

phasized, they must be eliminated by September 1969. The Supreme Court rejected "freedom of choice" plan in *Green* because, in its words,

Racial identification of the system's schools was complete, extending not just to the composition of student bodies at the two schools but to every facet of school operation—faculty, staff, transportation, extracurricular activities and facilities. In short, the state * * * organized and operated a dual system, part "white" and part "Negro".

Thus, by this criteria, two of the eleven Baldwin County schools within the system remain all-Negro and there is no provision in the present plan for their desegregation by September 1969.

■ In addition to new steps the school board, with the approval of the district court, may take to dismantle the dual system, the plan must be modified so as to provide for the substance of the following requirements:

1. Compliance day for effective student desegregation is the first day of September 1969.

2. Compliance day for the elimination of all-Negro schools is the first day of September 1970. Steps which may be taken by the Board to eliminate racial identification of the present all-Negro schools, in addition to the specific requirements of faculty integration, are the establishment of vocational or other special courses of instruction, summer schools, and desegregation of staff and transportation and all types of extracurricular activities and facilities.

3. Compliance day for total faculty desegregation is the first day of September 1970. By "total faculty desegregation" we mean that, as stated in *Jefferson*, "the pattern of teacher assignment to any particular school should not be identifiable as tailored for a heavy concentration of either

Negro or white pupils in the school".[4] In Baldwin County the district judge found that there were about 180 white teachers to 120 Negro teachers. For the 1969–70 school year the race of at least one of every five faculty members in a school must be different from the race of the majority of the faculty members at that school.[5]

4. To avoid resegregation, the transfer of a student from a school where his race is in the minority to a school where his race is in the majority may be permitted only in exceptional cases.

5. The district court shall forthwith request the Office of Education of the United States Department of Health, Education and Welfare to collaborate with the School Board of Baldwin County in the preparation of a plan to desegregate fully and affirmatively all public schools in the county, with comprehensive recommendations for locating and designating new schools, and consolidating existing schools to assist in eradicating past discrimination and effecting desegregation. The district court shall further require the School Board to make available to the Office of Education or its designees all requested information relating to the operation of the school district.

6. The plan shall also provide for the prohibition of racial discrimination in student assignments by the School Board under its current contract with Georgia Military College.

We emphasize that these are minimal September 1969 goals. The district court with the benefit of a current record and with the assistance of counsel and the United States Department of Health, Education and Welfare may find it necessary to go beyond these minimal specific requirements. The court may well conclude on the basis of the new record and in the light of suggested alternatives that, indeed, zoning, pairing, or closing certain schools is required "to convert promptly to a system without a 'white' and a 'Negro' school, but just schools".[6]

The opinion and mandate issued July 1, 1969, are recalled. This opinion is substituted for the previous opinion. Because of the urgency of this matter the mandate will issue immediately.

Affirmed with modifications.

---

4. United States v. Jefferson County Board of Education, 1967, 380 F.2d 385, 394 (Jefferson II).

5. In Baldwin County the Department of Justice found that there are about 180 white teachers to 120 Negro teachers. In the *Montgomery* case, supra, the Supreme Court approved the district judge's order which established for the 1968–69 school year a ratio of five to one; that is, "in a school with 12 or more teachers, the race of least one out of every six faculty and staff members was required to be different from the race of the majority of the faculty and staff members at that school". At the time the ratio of white to Negro teachers in the system as a whole was three to two. That is identical with the racial composition of teachers in Baldwin County, Georgia. The Supreme Court noted that the "goals to be required for future years were not specified but were reserved for later decisions". The Supreme Court also noted that the district court's order provided that the board must move toward a goal under which "in each school the ratio of white to Negro faculty members is substantially the same as it is throughout the system". Judge Johnson ordered that the ratio of Negro to white teachers in the assignment of substitute, student, and night school teachers was to be almost immediately made substantially the same as the ratio of Negro to white teachers in each of these groups for the system as a whole.

6. Green, 391 U.S. at 442, 88 S.Ct. at 1696; Jefferson II, 380 F.2d at 389.