430 F.2d 883
 Birdie Mae DAVIS et al., Plaintiffs-Appellants-Cross Appellees, and
United States of America, Etc., Plaintiff-Intervenor-Appellants-Cross Appellees,
v.
BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY et al., Defendants-Appellees-Cross Appellants, and
Twila Frazier et al., Intervenors-Appellees.
 No. 29332 Summary Calendar.
 United States Court of Appeals, Fifth Circuit.
 June 8, 1970.
 Certiorari Granted October 6, 1970.
 
 See 91 S.Ct. 11.
 Vernon Z. Crawford, Mobile, Ala., Jack Greenberg, New York City, for Birdie Mae Davis.
 Jerris Leonard, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., C. S. White-Spunner, Jr., U. S. Atty., Mobile, Ala., for the United States.
 Abram L. Philips, Jr., George F. Wood, Samuel L. Stockman, Mobile, Ala., for appellees.
 Before BELL, AINSWORTH, and GODBOLD, Circuit Judges.
 BELL, Circuit Judge:
 
 
 1
 We consider again the effort to convert the Mobile County School System from dual to unitary status. This is the ninth appeal of the matter to this court.[1] The system is now operating on a student assignment system fashioned by the district court after considering a school board plan of assignment, three separate HEW plans, and one plan submitted by the Department of Justice.
 
 
 2
 In Singleton v. Jackson Municipal Separate School District, supra, fn. (1), we approved the student assignment plan of the Mobile County system then in effect for all schools located west of Interstate Highway 65. This appeal basically complains only of the student assignments in the schools located east of I-65. However, in an effort finally to adjudicate the status of this system from the standpoint of all of the essentials required to convert a dual school system into a unitary school system, we have obtained supplemental findings of fact from the district court. See Ellis v. Board of Public Instruction of Orange County, Florida, 5 Cir., 1970, 423 F.2d 203; Mannings v. Board of Public Instruction of Hillsborough County, Florida, 5 Cir., 427 F.2d 874 [1970], as examples of the same approach.
 
 
 3
 In Ellis v. Orange County and in Mannings v. Hillsborough County, we adverted to the school desegregation requirements set out in Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19; Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 88 S. Ct. 1689, 20 L.Ed.2d 716, and the decision of this court in Singleton v. Jackson Municipal Separate School District, supra. In Ellis v. Orange County, we said:
 
 
 4
 "* * * In Green v. County School Board of New Kent County, * * * the mechanics of what must be done to bring about a unitary system were outlined. They were stated in terms of eliminating the racial identification of the schools in a dual system in six particulars: composition of student bodies, faculty, staff, transportation, extracurricular activities, and facilities * * *. It was such dual systems, organized and operated by the states acting through local school boards and school officials, which were held unconstitutional in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (Brown I), and which were ordered abolished in Brown v. Board of Education, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (Brown II).
 
 
 5
 "In Green the court spoke in terms of the whole system — of converting to a unitary, nonracial school system from a dual system. Then, in Alexander v. Holmes County Board of Education, * * * the court pointed to the end to be achieved. The result, if a constitutionally acceptable system may be said to exist, must be that the school system no longer operates as a dual system based on race or color but as a `unitary school * * [system] within which no person is to be effectively excluded from any school because of race or color.' * *" 423 F.2d at p. 204.
 
 
 6
 We thus proceed to a determination of the status of the Mobile system with respect to each of the six essential elements which go to disestablish a dual school system.[2] We find the system deficient in student assignment in certain schools and also in faculty and staff assignment.
 
 
 7
 The Mobile system covers the whole of Mobile County including the City of Mobile. The county is quite large in area, embracing 1,222 square miles. There are a total of 96 schools in the system in 91 buildings, and the 96 schools consist of senior high, junior high, and elementary schools plus one special school. Some of the buildings house separate elementary or junior high or high schools; others house combinations of these. There were 73,504 students in the system as of September 26, 1969. This total breaks down into 42,620 or 58 per cent white students, 30,884 or 42 per cent Negro students. Under the present plan 18,623 or 60 per cent of the Negro students in the system are assigned to schools having all or virtually all Negro student bodies. These Negro students are housed in 12 elementary, 3 junior high schools, 1 combination junior-senior high, and 3 senior high schools.
 
 FACULTY AND STAFF
 
 8
 The faculty and staff desegregation standard enunciated in Singleton v. Jackson, supra, requires assignment on a basis whereunder the ratio of Negro to white teachers and staff members in each school is substantially the same as each such ratio is to teachers and staff in the entire school system. The faculty ratio for the system is approximately 60 per cent white and 40 per cent Negro. As of April 7, 1970, there were 1,642 white faculty members and 1,098 Negro members or a total of 2,740. We have no information on staff ratios.
 
 
 9
 The Mobile County school system has almost totally failed to comply with the faculty ratio requirement although ordered to do so by the district court on August 1, 1969. Only a few schools approach the 60-40 faculty ratio. The district court is directed to require strict compliance with the Singleton v. Jackson rule for faculty and staff on or before July 1, 1970.
 
 
 10
 TRANSPORTATION, FACILITIES AND EXTRACURRICULAR ACTIVITIES
 
 
 11
 In the 1967-68 school term, 207 school buses transported 22,094 students daily. The facts disclose that school buses are used in all rural areas of the county and in the outlying areas of metropolitan Mobile and that they are operated on a non-segregated, non-discriminatory basis. The facts also demonstrate that all extra-curricular activities and facilities are operated on the same basis. Indeed, there is no complaint regarding transportation, facilities and extracurricular activities. The district court is directed to enter an order requiring the continued desegregation of facilities and extracurricular activities and to include the requirements of Singleton v. Jackson, supra, as to transportation, school construction and school site selection as a part of the order.
 
 STUDENT ASSIGNMENT
 
 12
 We have examined each of the plans presented to the district court in an effort to determine which would go further toward eliminating all Negro or virtually all Negro student body schools while at the same time maintaining the neighborhood school concept of the school system. Unlike Orange County (Ellis v. Orange County, supra), Mobile does not purport to use the strict neighborhood assignment system. It employs zones based on discretionary zone lines. In that sense it is like the Hillsborough County system (Mannings v. Hillsborough County, supra), and the situation, as in Hillsborough, can be greatly improved by pairing some schools located in close proximity to each other. See the description of neighborhood pairing used in Mannings v. Hillsborough County. The situation can also be improved by recasting the grade structure in some of the buildings but, at the same time, maintaining the neighborhood school concept.
 
 
 13
 The plan submitted by the Department of Justice on January 27, 1970, contemplates both pairing and the recasting of grades. It produces a result of 9 all or virtually all Negro student body elementary schools instead of 12 as at present, and 1 senior high school of the same type instead of 7 junior and senior high schools as at present. Instead of 60 per cent of the Negro students being assigned to such schools, the result under the Department of Justice plan would be 28 per cent (8,515 students instead of 18,623). Every Negro child would attend an integrated school at some time during his education career under the Department of Justice plan.
 
 
 14
 The result to be achieved under this plan proves an obvious fact. Ordinarily, it is easier to desegregate high and junior high schools than elementary schools. This is due to the difference in the size of the schools. Elementary schools are generally smaller and thus they receive students from a more restricted area. On the other hand, high and junior high schools, with their large student capacities, encompass larger areas and, more likely, areas containing diverse racial groups.
 
 
 15
 We conclude that the Department of Justice plan, as hereinafter modified, must be invoked. By way of modification, it will be necessary to desegregate the one all Negro high school — Toulminville. It appears from maps of record that the zone line between Murphy high and Toulminville high can be redrawn so as to include some of the students living in the area of the Crichton elementary school. Some of these students appear to reside nearer Toulminville than Murphy. In addition, the Department of Justice plan must be modified to close the Emerson elementary school (soon to be eliminated in an urban renewal project). This school would have an all Negro student body under the Justice Department plan. The 450 students who would be assigned to Emerson are to be assigned as follows: 200 to Council, 200 to Caldwell, and 50 to Lienkauf.
 
 
 16
 This will leave only 8 all Negro student body schools (all elementary), with 25 per cent of the Negro students assigned thereto (7,725 instead of 18,623), and every Negro child in the Mobile system will attend school in a desegregated junior high and high school on a neighborhood basis.[3]
 
 
 17
 Attached as Appendix A is a chart depicting student body composition by school and race under the present district court plan and the Department of Justice plan of January 27, 1970.[4] The district court is directed to implement the Department of Justice plan on or before July, 1, 1970 together with the Toulminville - Murphy and Emerson changes above described.
 
 
 18
 From the standpoint of demography, a majority of the Negro population in the Mobile school system is situated in a concentrated area within the City of Mobile to the east of Highway I-65. The all Negro student body schools which will be left after the implementation of the Department of Justice plan as modified, are the result of neighborhood patterns. This condition can be further alleviated through a majority to minority transfer policy and through the functioning of a bi-racial committee. The student assignments in the school system depend on zone lines which are drawn on a discretionary basis and therefore may be subject, in some instances, to abuse and in others, to improvement. The proper administration of zone lines depends upon good faith in establishing and maintaining the lines as well as continuing supervision over them.
 
 
 19
 The district court is directed to see that a bi-racial committee of the type described in Ellis v. Orange County, supra, is established. See Singleton v. Jackson Municipal Separate School District, 5 Cir., 1970, 426 F.2d 1364. In addition, the district court is directed to require the majority to minority transfer rule of Ellis v. Orange County. All transferring students must be given transportation if they desire it and the transferee is to be given priority for space.
 
 
 20
 The district judge is also directed to require that the bi-racial committee serve in an advisory capacity to the school board in the areas of the operation of the majority to minority transfer rule, the promulgation and maintenance of zone lines, and in school site location. As we said in Ellis v. Orange County, with respect to eliminating all Negro student body schools:
 
 
 21
 "* * * The majority to minority transfer provision under the leadership of the bi-racial committee is a tool to alleviate these conditions now. Site location, also under the guidance of the bi-racial committee, will guarantee elimination in the future. In addition, open housing, Title VIII, Civil Rights Act of 1968, 42 U.S.C.A. § 3601, et seq., Jones v. [Alfred H.] Mayer [Co.], 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, will serve to prevent neighborhood entrapment."
 
 DEFICIENCIES TO BE REMEDIED
 
 22
 We conclude that three of the six elements that go to make up a unitary system have been accomplished in Mobile County: transportation, extracurricular activities, and facilities. The remaining deficiencies in faculty and staff desegregation and in student assignment must be remedied on or before July 1, 1970 on the basis heretofore stated. All other direction herein given to the district court must also be accomplished not later than July 1, 1970.
 
 
 23
 Once done, and when the district court, by the standards herein stated, has made its own conclusion as to the system being unitary, the district court must retain jurisdiction for a reasonable time to insure that the system is operated in a constitutional manner. As the Supreme Court said in Green, " * * whatever plan is adopted will require evaluation in practice, and the court should retain jurisdiction until it is clear that the state-imposed segregation has been completely removed." 391 U.S. at 439, 88 S.Ct. at 1695.
 
 
 24
 APPENDIX "A"
 
 
 25
 COMPARISON OF DEPARTMENT OF JUSTICE
 PLAN WITH DISTRICT COURT PLAN

 Projected Enrollment
 Under Zone Lines Offered Assignments Under
 by the U.S. on District Court Plan
 1/27/70 of 1/31/70
ELEMENTARY SCHOOLS
SCHOOL GRADES WHITE NEGRO GRADES WHITE NEGRO
South Brookley 1-6 502 71 1-6 484 76
Morningside 1-5 631 0 1-5 751 0
Williams 1-6 571 43 1-6 554 60
Maryvale 1-5 414 117 1-5 453 171
Mertz 1-5 498 104 1-5 453 0
Craighead 1-5 347 489 1-5 290 569
Arlington 1-5 160 170 -closed-
Council 1-5 4 391 1-5 2 548*Emerson 1-5 0 450 -closed-
Lienkauf 1-5 273 165 1-5 224 235
Woodcock 1-5 424 167 1-5 193 186
Westlawn 1-5 532 0 1-6 541 0
Crichton 1-5 438 348 1-6 457 240
Old Shell Road 1-5 232 295 1-6 267 106
Caldwell 1-5 0 350 1-6 20 390
Howard -closed- 1-6 12 432
Owens 1-5 2 1414 1-6 0 1121
Fonvielle 1-5 0 1000 1-6 4 1163
Stanton Road 1-5 6 900 1-6 6 976
Gorgas 1-5 7 963 1-6 4 1168
Brazier 1-5 10 1022 1-5 0 955
Grant 1-5 15 1285 1-5 0 1231
Palmer/Glendale 1-5 434 931 1-5 66 600
Glendale/Palmer 1-5 434 931 1-5 385 192
Whitley 1-5 216 481 1-5 0 383
Robbins/Hamilton 1-5 638 855 1-5 0 859
Hamilton/Robbins 1-5 638 855 1-6 622 0
Chickasaw 1-5 473 100 1-6 495 3
 WEST OF I-65
Whistler 1-5 181 205 1-6 227 231
Thomas 1-5 180 95 1-6 222 101
Indian Springs 1-5 535 11 1-6 520 12
Eight Mile 1-6 280 66 1-8 586 110
Shepard 1-6 409 29 1-6 409 29
Dodge 1-6 675 65 1-6 675 65
Austin 1-6 396 22 1-6 396 22
Fonde 1-6 679 11 1-6 679 11
Dickson 1-6 835 193 1-6 835 193
Orchard 1-5 754 113 1-5 754 113
Will 1-5 657 175 1-5 657 175
Forest Hill 1-5 560 0 1-5 560 0

 Projected Enrollment
 Under Zone Lines Offered Assignments Under
 by the U.S. on District Court Plan
 1/27/70 of 1/31/70
MIDDLE SCHOOLS
SCHOOL GRADES WHITE NEGRO GRADES WHITE NEGRO

Rain 7-12 1150 97 7-12 1089 112
Eanes/Hall 6-9 1292 977 6-8 978 280
Hall/Eanes 6-9 1292 977 6-8 180 838
Phillips/Washington 6-9 1170 1716 7-8 691 179
Washington/Phillips 6-9 1170 1716 7-9 0 1463
Dunbar 6-9 181 985 7-8 5 738
Central 6-9 468 1206 9-12 0 1233
Mobile Co. Training 6-7 432 859 6-12 57 1125
Prichard 6-7 240 410 6-8 299 201
Trinity Gardens 6-7 380 690 6-8 0 996
Clark 8 536 948 7-9 1080 290
 WEST OF I-65
Azalea Road 7-8 1039 38 7-8 1039 38
Scarbrough 6-8 638 77 6-8 638 77
Hillsdale 6-8 431 217 6-8 431 217

HIGH SCHOOLS
SCHOOL GRADES WHITE NEGRO GRADES WHITE NEGRO

Rain 7-12 1150 97 7-12 1089 112
Williamson 10-12 880 471 9-12 472 383
Murphy 10-12 1643 1761 9-12 2340 513**Toulminville 10-12 9 740 10-12 0 1125
Blount/Carver 9-12 854 1846 9-12 8 1818
Carver/Blount 9-12 854 1546 6-8 1 899
Vigor/Bienville 9-12 1134 1211 9-12 1447 439
Bienville/Vigor 9-12 1134 1211 1-6 288 313
 WEST OF I-65
Davidson 9-12 2302 72 9-12 2296 72
Shaw 9-12 1250 240 9-12 1242 237
 
 
 
 Notes:
 
 
 *
 An optional provision of the Department of Justice plan called for closing all Negro Emerson elementary school and assigning its 450 students to six non-contiguous schools: Maryvale, Woodcock, Westlawn, Fonde, Morningside, and Lienkauf. This option is eliminated. As modified by the court, the students who would attend Emerson will, instead, attend Council, Caldwell and Lienkauf. Council will have 4 white and 591 Negro students, Caldwell will have 550 Negro students, and Lienkauf will have 273 white and 215 Negro students
 
 
 **
 To be rezoned and integrated (see modification in text)
 
 
 [1]
 Singleton v. Jackson Municipal Separate School District, 5 Cir., 1969, 419 F.2d 1211 (en banc consideration of Mobile case and 12 additional school desegregation cases); Davis v. Board of School Commissioners of Mobile County, Ala., 5 Cir., 1969, 414 F.2d 609; Davis v. Board of School Commissioners of Mobile County, Ala., 5 Cir., 1968, 393 F.2d 690; Davis v. Board of School Commissioners of Mobile County, Ala., 5 Cir., 1966, 364 F.2d 896; Davis v. Board of School Commissioners of Mobile County, Ala., 5 Cir., 1964, 333 F.2d 53; Davis v. Board of School Commissioners of Mobile County, Ala., 5 Cir., 1963, 322 F.2d 356; Davis v. Board of School Commissioners of Mobile County, Ala., 5 Cir., 1963, 318 F. 2d 63; Davis v. Board of School Commissioners of Mobile County, Ala., 5 Cir., 1970, 422 F.2d 1139
 
 
 [2]
 Under the stringent requirements of Alexander v. Holmes County Board of Education, supra, which this court has carried out in United States v. Hinds County School Board, 5 Cir., 1969, 417 F.2d 852, this court has judicially determined that the ordinary procedures for appellate review in school segregation cases have to be suitably adapted to assure that each system, whose case is before us, "begin immediately to operate as unitary school systems." Upon consideration of the record, the court has proceeded to dispose of this case as an extraordinary matter. Rule 2, FRAP
 
 
 [3]
 The Department of Justice plan coupled with the Toulminville and Emerson feature seems superior to the HEW plans. Any one of the plans, HEW or Department of Justice as modified, would lead to a unitary system. The original HEW plan (Plan B), filed on July 10, 1969, principally utilized zoning, but also proposed transporting approximately 2,000 Negro students from the heavy Negro concentration in eastern Mobile to predominantly white schools in the western and southern part of Mobile. It did not contemplate transporting white students in exchange. This plan would retain 6 all Negro schools serving 5,949 Negro students, or 19 per cent of the total Negro students in the system. HEW Plan B-alternative, filed December 1, 1969, employed contiguous zoning as well as contiguous pairing. The plan contemplated no transportation of students. It would leave 9 all Negro schools serving 7,971 students, or 26 per cent of the total. HEW Plan B-1-alternative, filed December 1, 1969, was limited to elementary schools and incorporated Plan B-alternative for junior and senior high schools. The plan involves non-contiguous pairing of each all Negro school in eastern Mobile with a predominantly white school in western or southern Mobile (across the system). The plan calls for cross-transportation of both whites and Negroes. There would be no all Negro schools under this plan. This non-neighborhood plan is euphemistically referred to in plaintiff's brief as a "Shared Neighborhood Plan."
 
 
 [4]
 The defendants warn that the figures used by the Department of Justice and HEW are inaccurate. This may be true but the defendants, the only parties in possession of current and accurate information, have offered no help. This lack of cooperation and generally unsatisfactory condition, created by defendants, should be terminated at once by the district court. Such errors in information as do exist may be corrected and the situation adjusted accordingly by the district court