Willie Reed **TAYLOR** et al., Plaintiffs,

v.

The **COAHOMA COUNTY SCHOOL DIS-
TRICT** et al., Defendants.

No. DC 698.

United States District Court,
N. D. Mississippi,
Delta Division.

July 2, 1970.

Supplemental Opinion Feb. 12, 1971.

Melvyn R. Leventhal, of Anderson, Banks, Nichols & Leventhal, Jackson, Miss., for plaintiffs.

William H. Maynard, of Maynard, Fitzgerald, Maynard & Bradley, Clarksdale, Miss., for defendants.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

This action is before the Court for adoption of a plan for the operation of the schools of defendant school district, Coahoma County School District, to be effective with the opening of school for the school year 1970–71.

Pursuant to previous order of the Court, two plans have been submitted, and are now on file in this action. A plan has been submitted by Dr. Forrest W. Murphy, Special Master appointed by the Court. (Murphy Plan) The plaintiffs and defendants have filed objections to this plan. A plan has been submitted by the Division of Equal Educational Op-

portunities, United States Office of Education. (HEW plan) The parties object to this plan.

The Court must evaluate each of these in light of existing legal principles.

There are several generally accepted rules of law applicable to the case sub judice.

■ The defendant Coahoma County School District (School Board) has the obligation to terminate its dual system of schools at once and to operate now and hereafter only a unitary system within which no person is to be effectively excluded from any school because of race or color. Alexander v. Holmes County Bd. of Ed., 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969); Griffin v. County School Board, 377 U.S. 218, 234, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); see also Green v. County School Board of Kent County, 391 U.S. 430, 438–439, 442, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).

■ The non-acceptance of a plan for the operation of the schools of the district by a segment of society cannot act to frustrate the implementation of the plan, if the plan is constitutionally sound. Monroe et al. v. Board of Commissioners of Jackson, Tenn., et al., 1968, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733, 739; United States v. Indianola Municipal Separate School District, 5 Cir. 1969, 410 F.2d 626, 631; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 15, 16.

■■ Any State Statute, law, or custom which hinders or prevents the School Board from adopting and implementing a plan which will remove the dual system of schools and install a unitary system may not be imposed to frustrate the constitutional mandate to do so. United States v. Indianola, supra, 410 F.2d at 630, 631; United States v. Greenwood Municipal Separate School District, 5 Cir. 1969, 406 F.2d 1086, 1094; United States v. Board of Education of City of Bessemer, 5 Cir. 1968, 396 F.2d 44, 51. The Court, however, should fashion any remedy within the scope of State Law, if by doing so, a plan which is constitutionally acceptable can be devised for the operation of the schools of the district.

■■ It is the duty of the Court to order implementation of a plan which promises the end of the dual system of schools in the defendant district, if such is currently available. If the plan upon implementation proves to be unworkable or to have defects herein, the burden is upon the School Board to point this out to the Court and seek modification. The tenor of the law in converting to a unitary system is to shift from a status of litigation to one of unitary operation pending litigation. Alexander v. Holmes, County Bd. of Ed., supra, United States of America by Mitchell v. Board of Education of Baldwin County, Georgia et al., 5 Cir. 1969, 417 F.2d 848.

The district relies upon the facilities of the Coahoma County Agricultural High School (Aggie High) which is operated by the Coahoma Junior College (Junior College), to house its black student population. This school was established in 1924 as a black school under Mississippi Law [1] by the County School Board at that time. The policy to operate as an all black school was discarded

---

1. Section 6454, Mississippi Code, 1942, Annotated, Recompiled. This statute was enacted by the Mississippi Legislature in 1924, Chapter 283, Laws of Mississippi, 1924, and provides:

"§ 6454. County school board to establish county agricultural high schools.— The county school board in each county in the state is hereby authorized and empowered to establish not more than two agricultural high schools in the county, and determine their location, one for the white youths exclusively and the other for colored youths exclusively, in which instruction shall be given in high school branches, theoretical and practical agriculture, domestic science, and in such other branches as the board may hereinafter provide for, and made a part of the curriculum, subject to review and correction by the state board of education. If only one school be established at first, the school board shall have power at any subsequent time to establish an additional school whenever the necessity for the same shall arise."

in 1968, when the Junior College and the School Board entered into a contract opening the school to all races.[2] This policy, however, has not been fruitful, as no white child has ever attended Aggie High.

On June 8, 1949, the Board of Trustees of Aggie High ordered the thirteenth year of work added to the school for the 1949–50 school year, and the fourteenth year of work for the 1950–51 session. Thus, a Junior College was established to be operated in conjunction with Aggie High. The name of the school was changed to Coahoma Junior College and Agricultural High School.

The Mississippi Legislature in 1950[3] authorized the establishment of junior colleges and validated all existing junior colleges.[4] Thus, the Junior College became a Junior College under Mississippi Law, with Aggie High as an adjunct thereto. The Junior College, like Aggie High, is an all black school.

Since the creation of the Junior College, Aggie High has been under the control of the Junior College. The character of the school has not changed. It is now, as it always has been, an all black school serving black children of Coahoma County.

Aggie High is supported, in part, from taxes assessed on and collected from all property situated in Coahoma County, including that situated within the Clarksdale Municipal Separate School District. Any child in the Municipal Separate School District may attend Aggie High. A number of the black children residing in the Municipal Separate School District have in the past attended and now attend Aggie High.

It is clear that Aggie High is under the control of and is operated by the Junior College. The School Board does not control nor have the right to control Aggie High. The parties agree that such is the status of Aggie High. The Court agrees.

The School Board and the Board of Trustees of the Junior College, however, can contract with reference to the attendance at Aggie High of high school students residing in the defendant school district. In fact such a contract is now in existence.[5]

In light of the principles of law outlined above, and the foregoing statement of the status of Aggie High, existing under applicable statutes of the State of Mississippi, the Court must consider the plans for the operation of the schools of the district as submitted to the court.

Before entering upon a discussion of the plans available to the Court, it is well to state that the central point of contention concerns the Junior and Senior High Schools of the district.

The controversy with regard to the elementary grades, i. e., 1 through 6, appears to have been settled. At least there is no controversy at the present time in regard thereto.

This opinion, therefore, will deal principally with the assignment of students in grades 7 through 12 to the schools in the district.

To set the stage for this discussion there should be kept in mind the background with reference to the assignment of students in grades 7 through 12 to schools within the district. For the scholastic year 1968–69 all white children in the district, in grades 7 through 12, attended Coahoma County Junior-Senior High School. There were 611 white students and 4 black students attending this school for the year mentioned. All

2. The contract carrying into effect the freedom-of-choice plan, is dated February 23, 1968, and provides in part as follows:
"Any white or Negro student now, or hereafter residing in Coahoma County School District may, at his or her selection, without assignment, attend either the Coahoma County High School or the Agricultural High School."

3. Section 6475–01, Mississippi Code 1942, Annotated, Recompiled, Laws 1950, ch. 369, § 1.

4. Id. § 6475–03, Laws 1950, ch. 369, § 3.

5. See Exhibit K to answer of defendants to the Court's request of May 19, 1970.

black students in grades 7 and 8 attended neighborhood schools for that scholastic year. All black students in grades 9 through 12 (1,011 in number) attended Aggie High.

The Court ordered the district to provide for the assignment of black students in grades 9 through 12 to the Coahoma County High School for the scholastic year 1969–70 in such numbers as to reach a 20% ratio in the student body. Thereafter, the Court provided that black students in grades 7 and 8 should be transferred from neighborhood schools to the Coahoma County Junior High School to the extent necessary to bring the student body for those grades to a fifty-fifty level.

In carrying out the orders of the Court for the 1969–70 school year, 71 black students attended grades 7 through 12 at Coahoma County Junior-Senior High School. The student body was composed of 488 white children and 71 black children for a total of 559 students. For the scholastic year 1969–70 all other black students in grades 9 through 12 attended Aggie High.

The student population of the district in grades 9 through 12 is 1,376, composed of 341 white children and 1,035 black children. To accommodate these children the defendant district has one attendance center to offer, i. e., Coahoma County Junior-Senior High School. The capacity of this school is said by the Board to be 700 students. Dr. Murphy and HEW show the capacity to be 900 students. The difference seems to stem from the fact that the Board considered some of the classrooms in the school as being used for special purpose classes and not available for regular classrooms. For the purpose of the Court's decision the capacity as represented by the Board will be accepted.

There are 155 students in grades 7 and 8 presently attending the Coahoma County Junior High School. When considering the room available for high school students in grades 9 through 12, the students in grades 7 and 8 will not be considered.

■ The Board suggests to the Court that a plan be adopted which will provide that all white students in grade 7 through 12 within the district be assigned to the Coahoma County Junior-Senior High School Attendance Center. The latest available school records show that there are within the district 341 white students in grades 9 through 12, and 147 white students in grades 7 and 8. In order to carry out the Board's suggestion these students, aggregating 488, would be assigned to the Coahoma County Junior-Senior High School Attendance Center. The Board would then assign to the center 122 black students distributed through grades 7 through 12. After this had been accomplished, the student body at the Attendance Center would be composed of 80% white and 20% black children. The Board asserts that if the percentage of black students in the school is more than 20% the white children will leave the school, resulting in all black Junior-Senior High School. The effect of such a plan would be that 122 black students out of a total of 1922 in the grades mentioned would receive an integrated education.[6]

6. An analysis of the student population, according to the latest information available to the Court is:

STUDENT POPULATION ATTENDING
SCHOOL AT PRESENT TIME

| | White | Black | Total |
|---|---|---|---|
| Grades 9–12 | | | |
| Coahoma County High School | 341 | 63 | 404 |
| Coahoma Agriculture High School | –0– | 972 | 972 |
| | 341 | 1035 | 1376 |

| | White | Black | Total |
|---|---|---|---|
| Grades 7–8 | | | |
| Coahoma County Jr.-High School | 147 | 8 | 155 |
| Elsewhere in County Schools | –0– | 879 | 879 |
| | 147 | 887 | 1034 |
| Grades 1–6 (Plus Special Education Classes) | 102 | 3540 | 3642 |
| | 102 | 3540 | 3642 |
| Grand Total of all students | 590 | 5462 | 6052 |

All black students in the district in grades 9 through 12, other than those assigned to Coahoma County Junior-Senior High School Attendance Center, would attend Aggie High. All those black students in grades 7 and 8, other than those assigned to Coahoma County Junior-Senior High School, would attend neighborhood schools.

The Board does not make available to the Court the means by which the Board would select the 122 black students to attend the center aforesaid out of the 1,922 black students in the district. Quotas in the past have been acquired in this attendance center by freedom-of-choice or other means devised by the Board.

A cursory examination of this plan reveals clearly that if the plan is adopted and carried into effect, the de jure dual system of schools which has been and is now established in the defendant district will not be eliminated and a unitary system will not be accomplished. The directive of Alexander v. Holmes, County Bd. of Ed., supra, that the dual system be eliminated and a unitary system forthwith established, would not be accomplished.

## MURPHY PLAN

The Murphy plan is based upon the assumption that the Coahoma County Junior-Senior High School will accommodate 900 students. Dr. Murphy recommended assignment of students in grades 7 through 12 to this school on an equal basis, i. e., 450 white students and 450 black students.

Considering this recommendation in the light of a 700 student capacity, the number to be assigned to the attendance center would be 350 white students and 350 black students.

Such a program would leave unassigned 138 white students and 1572 black students. The black and white students who are not assigned to the Coahoma County Junior-Senior High School Attendance Center would be assigned to the neighborhood schools of the district and to Aggie High. Those students in grades 7 and 8 would be assigned to the neighborhood schools, and those in grades 9 through 12 would attend Aggie High.

Dr. Murphy does not recommend a method by which students may be assigned to the Coahoma County Junior-Senior High School Attendance Center. This matter would be left to the discretion of the Board or to the direction of the Court.

The Court is of the opinion that the Murphy plan, while developing one school in the district which would meet the criteria of "just a school", would leave a dual system of schools. There would not be a unitary system of schools for the district under the Murphy Plan.

## HEW PLAN

The HEW Plan provides for the assignment of all students residing in the district in grades 10 through 12 to the Coahoma County Junior-Senior High School Attendance Center. HEW projects the enrollment at this center as 923 students. It is recommended that a portable classroom be added to this center in order to take care of the excess school population. HEW's proposal is bottomed on a capacity for the center of 900 students. As has been hereinbefore noted, the School Board takes the position that the capacity of this center is 700 rather than 900 students.

The HEW Plan provides for the assignment of all students residing within the district in grades 8 and 9 to Aggie High. The projected enrollment shown by the plan is 1,051 students. The plan shows that this attendance center has the capacity of 972 students. It is envisioned, however, that the Sandy Bayou Attendance Center, which is situated adjacent to the Aggie High Campus, would be used in conjunction with Aggie High in order to accommodate the student population in these grades. The plan provides that all students residing in the district attending grade 7 be assigned to neighborhood schools. De-

fendants object to HEW's plan and bottom their objection upon the contention that Aggie High, being under the jurisdiction of the Junior College, is not authorized by statute to teach anything but high school grades, i. e., 9 through 12. Defendants contend that this part of HEW's plan is impermissible.

■ The Court should, if possible, adopt a plan for the operation of the schools within the school district which will not conflict with the statutory law of the state. The Junior College has always operated Aggie High and is not authorized to operate anything but a high school.

■ Plaintiffs suggest the zoning of the two high schools in the district and the assignment of students in grades 1 through 8 to neighborhood schools. The black children in the district in grades 1 through 8 have always attended neighborhood schools. White children in grades 1 through 6 have always attended neighborhood schools, while those in grades 7 through 12 have attended the Coahoma County Junior-High School Attendance Center. The defendant School District can accommodate only 700 high school students at the Coahoma County Junior-Senior High School Attendance Center. The latest available figures reflect that there are residing within the district 1376 students in the high school grades. If the capacity of the Coahoma County Junior-Senior High School Attendance Center is utilized there will be 676 students in the high school grades who will not have available facilities unless they attend Aggie High.

It has been noted above that defendant School District and the Junior College Board of Trustees have presently in force a contract for the attendance at Aggie High of high school students residing within defendant district. The Court can see no legitimate objection to the zoning of the district for the assignment of students in the high school grades.

The Court is cognizant of the opinion held by defendant School Board that such a plan for the School District will have the effect of causing the white students to abandon the schools. The Court cannot envision a plan, the implementation of which will eliminate the dual system of schools in the district which does not provide for the assignment of high school students on some type of a zoning plan to the two available high school attendance centers.

The Court has not discussed other features of the plan which it is necessary for defendant school board to adopt in order to eliminate the dual system of schools. The Fifth Circuit has indicated that the District Courts should require school districts to comply with the provisions of *Singleton*.[7] The provisions of *Singleton* will be incorporated in the order of the Court.

An appropriate order will be entered pursuant to this opinion.

## SUPPLEMENTAL OPINION

The plaintiffs in this action have moved the court for supplemental relief. The court has received evidence and argument of counsel on the motion and now makes its findings of fact and conclusions of law which will control the court's decision on the motion.

In the court's order of August 18, 1970, defendant Coahoma County School District was authorized for the school year 1970–71 to permit the transfer of students between the two secondary schools operated for the benefit of high school students residing in the district under the conditions and circumstances set forth in the order. Basically transfers were authorized so that students residing in one geographic zone of the district could transfer to the school serving the other zone to pursue a course of study not available in the school serving the zone of the residence of the student.

7. Singleton v. Jackson Municipal Separate School District et al., 419 F.2d 1211.

The court directed that a study be made of the curriculum of the two secondary schools and the feasibility of changes being made to eliminate the disparity existing in the courses of study offered at the schools.

The defendant school districts caused the study mentioned in the preceding paragraph to be made, and they concluded that, at the present time, there existed no necessity for changing the curriculum at either school. The defendant boards presented a written report to the court on December 7, 1970, expressing the conclusion reached by them.

Defendant Board of Education of Coahoma County, on September 23, 1970, filed a written report in this action, setting forth in detail the transfers which had been granted pursuant to the transfer provisions of the court's order. The report reflects that sixty-six transfers were granted—twenty-six for students residing in the zone served by Aggie High to transfer to Coahoma County High School, and forty for students residing in the zone served by Coahoma County High School to transfer to Aggie High.

Plaintiffs filed a motion for supplemental relief on December 28, 1970, and a hearing was held on the motion on January 25, 1971. Evidence received at the hearing reflects that twenty-seven students transferred out of the Aggie High zone to the zone served by the Coahoma County High School. Twenty-two of these students were white students and five were black students. The evidence reflects that thirty-nine students residing in the zone served by the Coahoma County High School transferred to Aggie High.[1]

Defendant Board of Education of Coahoma County, in its report filed with the court on October 16, 1970, shows that 593 students are in attendance at Coahoma County High School, of which 418 are black students and 175 are white students. The school's faculty of thirty-two full time teachers consists of four black teachers and twenty-eight white teachers. The percentages in faculty assignment are 88% white and 12% black.

At the hearing on the motion the evidence reflects that for the 1970–71 school year the student body at Aggie High is composed of 748 students, only one of which is a white student. The faculty is composed of forty-seven black teachers and one white teacher. The evidence further reflects that the student body at Coahoma County High, at this time, is composed of 377 black students and 152 white students for a total of 529 students. The faculty composition is shown to be the same as reflected by the report filed with the court.

The statistical information furnished by the defendant school boards compels the conclusion that the transfer provision authorized by the court in its order of August 18, 1970 has impeded rather than encouraged the integration of the two secondary schools serving high school students residing in the Coahoma County School District. The figures hereinbefore mentioned speak for themselves. Figures speak and when they do courts listen.[2]

It is, therefore, the duty of the court to withdraw the transfer provision of its previous order, effective at the close of the current school year.[3]

Plaintiffs suggest that the court enter a transfer provision author-

1. It was noted that there is a variance between the report and the evidence submitted at the hearing. The variance is slight and is not material to the decision of the court.

2. See Brooks v. Beto, 366 F.2d 1 (5 Cir. 1966) (and the numerous cases cited in n. 14, page 9) ; Hawkins v. Town of

Shaw, Miss., 437 F.2d 1286 (5 Cir., January 23, 1971).

3. The Supreme Court in Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968) held at 391 U.S. 459, 88 S.Ct. at 1705:
   " * * * Like the transfer provisions held invalid in Goss v. Board of Educa-

izing the transfer of any black student assigned to the Coahoma Agricultural High School to the Coahoma County High School; and any white student assigned to the Coahoma County High School to the Coahoma Agricultural High School. Such a transfer provision does not appear to the court to be appropriate for the defendant school district.

The Coahoma County School District is unique and does not lend itself to a regular pattern of school desegregation plans. The district has operated a dual system of secondary schools since the establishment of the agricultural high school by the county in 1924.[4] The facilities of the county school district are not and have never been adequate to provide educational opportunities for all secondary students residing within the district. Facilities for the white student population have been provided, and the black students have been sent to Aggie High.

Black students in small numbers have attended the county high school in prior years. With the zoning of the district this year the county high school is predominately black, and Aggie High remains virtually all black.

■■■ There has been some desegregation of the faculty at the county high school (28 white and 4 blacks), but virtually none at Aggie High (47 blacks and 1 white). The Court of Appeals for the Fifth Circuit has consistently held that faculty desegregation is one

of the prerequisites of a unitary school system. Davis v. Board of School Commissioners of Mobile County, 430 F.2d 883 (5 Cir. 1970). Without faculty desegregation the system continues to be a dual system of schools. It must be conceded that faculty desegregation encourages and paves the way for student desegregation. Faculty desegregation is therefore an essential step in the desegregation of any school district.

The record in this action reflects that the defendant Coahoma County School District, through its board of trustees (County Board), selects and employs the faculty and staff at Coahoma County High School and that the Board of Trustees of Coahoma Junior College (Junior College Board) selects and employs the faculty and staff at Aggie High.

The July 2, 1970 order of the court provided for the desegregation of the faculty and staff of defendant Coahoma County School District according to the faculty and staff desegregation standard enunciated in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5 Cir. 1970). The faculty and staff of Aggie High were not covered by this portion of the order since such faculty and staff were not a faculty and staff of defendant Coahoma County School District. The court, in dealing with the faculty and staff of Aggie High, provided in its order that defendant Junior College Board, in selecting the

tion, 373 U.S. 683, 686, 83 S.Ct. 1405, 10 L.Ed.2d 632, [635], '[i]t is readily apparent that the transfer [provision] lends itself to perpetuation of segregation.' While we there indicated that 'free-transfer' plans under some circumstances might be valid, we explicitly stated that 'no official transfer plan or provision of which racial segregation is the inevitable consequence may stand under the Fourteenth Amendment.' * * *

We do not hold that 'free transfer' can have no place in a desegregation plan. But like 'freedom of choice,' if it cannot be shown that such a plan will further rather than delay conversion to a unitary, nonracial, nondiscriminatory school sys-

tem, it must be held unacceptable. See Green v. County School Board, supra, 391 U.S., [430] at 439–441, 88 S.Ct. [1689], at 1696. [20 L.Ed.2d 716 at 724–726]."

4. The Coahoma County Agricultural High School was organized by Coahoma County in 1924 as an agricultural high school for colored youths exclusively, pursuant to Section 6454, Miss.Code 1942, Ann. (Rec.1952). The school added the thirteenth grade in 1949, the fourteenth in 1950, and became an adjunct to a junior college in 1950, by virtue of Sections 6475–01 and 6475–03, Miss.Code 1942, Ann. (Rec.1952), Laws 1950, Ch. 369, §§ 1 and 3.

faculty for Aggie High, should abide by the principles enunciated in Singleton, supra, so far as practical to do so.

The evidence shows that the Junior College Board has endeavored to desegregate its faculty and staff by a voluntary approach. The figures show, however, that the endeavor of the board has not been successful. It is, therefore, apparent that the court must deal with the problem in a manner different from that which has been utilized in the past.

The County Board contends that it does not have a voice in the selection of the faculty and staff of Aggie High. The Junior College Board contends that it does not have a voice in the selection of the faculty and staff of Coahoma County High School. Thus, each board contends that it is without legal authority or right to require members of its faculty or staff to accept assignments to a school in a different district, as a condition of continued employment. Hence, the boards say the only way faculty and staff desegregation can be accomplished is by the employment by each board of a sufficient number of faculty and staff members of each race, who are willing to work in a desegregated situation. It is apparent, however, that this approach will not solve the problem.

■ The Coahoma County School District is legally obligated to provide educational opportunities to all children of every race in the elementary and secondary grades residing within its district. The obligation of the district is to furnish these opportunities without constitutional infirmities. Local conditions, separate legal entities, state laws and statutes cannot frustrate the implementation of constitutionally protected rights. United States v. Indianola Municipal Separate School District, 410 F.2d 626, 630–631 (5 Cir. 1969). The remedial power of the federal courts under the Fourteenth Amendment is not limited by state law. Haney v. County Board of Education of Sevier County, 429 F.2d 364, 368 (8 Cir. 1970). The court is dealing with boards which have been created pursuant to state law and owe their existence to state statutes. In the context of this action the boards deal with the same subject matter—students residing within the defendant school district who attend secondary grades. The defendant school district must, therefore, rely upon Aggie High to furnish the necessary additional facilities.

■ When faced with the problem presented in this action the court can only respond by requiring the County Board and Junior College Board to provide for the exchange of the faculty and staff personnel in Coahoma County High School and the Agricultural High School to the extent necessary to implement the Singleton standard in both schools. To give effect to the standard the two schools will necessarily have to be considered as schools of defendant school district.

An appropriate order is being entered by the court.